## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKALHOMA

| | | |
|---|---|---|
| JASON DINWIDDIE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _CIV-14-1127-W_ |
| SUZUKI MOTOR OF AMERICA, INC., a foreign corporation, | ) ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Jason Dinwiddie, individually and on behalf of all others similarly situated, and brings this Class Action Complaint against Defendant Suzuki Motor of America, Inc.  In support whereof, Plaintiff hereby alleges and states as follows:

## PARTIES

1.      Plaintiff Jason Dinwiddie is an individual who at all times relevant to this Petition resided in Oklahoma and Canadian Counties, State of Oklahoma.

2.      Defendant Suzuki Motor of America, Inc., is a California corporation with its headquarters in Brea, California.  Defendant is a subsidiary of Suzuki Motor Corporation, a Japanese corporation.  Defendant's registered agent for service of process in Oklahoma is:  The Corporation Company, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

3.     In 2013, Suzuki Motor of America, Inc., acquired and assumed all product liability, including all liability for recalls, of American Suzuki Motor Corporation, a California corporation and former subsidiary of Suzuki Motor Corporation, following a Chapter 11 bankruptcy of American Suzuki Motor Corporation.

4.     Defendant Suzuki Motor of America, Inc., and American Suzuki Motor Corporation engage and have engaged in the motor vehicle business throughout Oklahoma through various Suzuki dealerships, including Big Red Suzuki a/k/a Big Red Sports and Imports, 418 North Interstate Drive, Norman, Oklahoma 73072 and Ferguson Advantage Import, 1501 North Elm Place, Broken Arrow, Oklahoma 74012. http://www.suzuki.com/dealer?zip= oklahoma.   Defendant continues to service existing Suzuki vehicles at these and other locations in Oklahoma.

## JURISDICTION AND VENUE

5.     Plaintiff asserts claims against Defendant under Oklahoma's Uniform Commercial Code for breach of express and implied warranties, 12A Okla. Stat. §§ 2-313 – 2-315 *et al.*; the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; Oklahoma manufacturers' products liability; Oklahoma common law negligence; the Oklahoma Consumer Protection Act, 15 Okla. Stat. §§ 751 *et seq.*; unjust enrichment; and fraudulent concealment.

6.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action brought under Fed. R. Civ. P. 23 and the amount in controversy exceeds $5,000,000.00 and Plaintiff and Defendant have diversity of citizenship.   Furthermore, this Court has subject matter jurisdiction pursuant

to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367(a) (supplemental jurisdiction), and 15 U.S.C. § 2310(d)(1)(B) (Magnuson-Moss Warranty Act).

7.     This Court has personal jurisdiction over Defendant because Defendant and American Suzuki Motor Corporation do business in Oklahoma, including reaching out to Oklahoma consumers, selling vehicles in Oklahoma, entering into contracts with persons in Oklahoma, and maintaining a regular business presence in Oklahoma.   Therefore, sufficient minimum contacts between Defendant and Oklahoma exist to support this Court's jurisdiction. *International Shoe v. Washington*, 326 U.S. 310 (1945); *see also* 12 Okla. Stat. § 2004.

8.      Venue is proper in this court because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Oklahoma County, Canadian County, and Cleveland County, State of Oklahoma, which are all situated within the Western District of Oklahoma.  28 U.S.C. §1391(b)(2).

## GENERAL ALLEGATIONS WITH RESPECT TO DEFENDANT

9.     American Suzuki Motor Corporation was a California corporation engaged in the business of manufacturing, marketing, distributing, and selling new motor vehicles in the United States, including in the State of Oklahoma.

10.     On November 5, 2012, American Suzuki Motor Corporation filed for Chapter 11 bankruptcy in Case 8:12-bk-22808-SC (Bankr. C.D. Cal. 2013).   The bankruptcy resulted in the acquisition of certain assets and liabilities of the American Suzuki Motor Corporation by Defendant Suzuki Motor of America, Inc., pursuant to an asset purchase agreement dated March 6, 2013.

3

11.     Part 2.5 of the purchase agreement, termed "Assumed Liabilities," stated that Defendant assumed "all Suzuki Product Liability[.]"   Part 16 of the purchase agreement defined "Product Liability" to include "any Liability of Seller [American Suzuki Motor Corporation], regardless of whether arising before or after the Petition Date, (i) under the Express Warranty Claims on any Suzuki products; (ii) for recalls and other obligations under the NTMVSA with respect to Suzuki Products; or (iii) under any Lemon Laws with respect to Suzuki Products."

12.     From at least 2004-2008, the American Suzuki Motor Corporation manufactured, marketed, distributed, and/or sold the Suzuki Forenza and Suzuki Reno motor vehicle throughout the United States, including in Oklahoma.

13.     Upon information and belief, all Suzuki Forenzas for the years 2004-2008 and all Suzuki Renos for the years 2005-2008 contained a three-year / 36,000 mile express warranty covering all parts and workmanship except for normal wear and tear.

14.     A number of consumer complaints were filed with the federal National Highway Traffic Safety Administration with respect to electrical fires in 2004-2008 model Suzuki Forenzas.  Specifically, with respect to **2004 models**, there were at least two electrical fire complaints dated January 16, 2008 (electrical fire – related to lights) and March 10, 2008 (electrical fire – related to lights).  With respect to **2005 models**, there were at least four electrical fire and related complaints dated April 5, 2007 (electrical fire – related to lights); December 7, 2007 (fire – cause uncertain); October 24, 2012 (electrical fire – related to lights), and January 24, 2013 (electrical fire – related to lights).  With respect to **2006 models**, there were at least six electrical fire and related

complaints dated February 3, 2009 (electrical fire – cause uncertain – injury); December 4, 2009 (electrical fire – cause uncertain); August 16, 2010 (electrical fire – cause uncertain – injury); August 13, 2012 (electrical fire – related to lights); June 11, 2014 (electrical fire – cause uncertain); and July 1, 2014 (electrical fire – cause uncertain). With respect to **2007 models**, there were at least fifteen electrical fire and related complaints dated December 4, 2008 (electrical fire); January 5, 2009 (burning smell on driver's side – injury); May 25, 2011 (electrical fire – related to lights); February 1, 2012 (electrical fire –related to lights); August 8, 2012 (burning smell under instrument panel); September 10, 2012 (electrical fire – related to lights); July 24, 2013 (fire – cause uncertain); September 20, 2013 (electrical fire – related to lights); November 13, 2013 (electrical fire – related to lights); January 15, 2014 (interior fire – cause uncertain); March 12, 2014 (key hot in ignition); July 11, 2014 (electrical fire); July 15, 2014 (electrical fire); August 22, 2014 (engine fire); and August 27, 2014 (electrical fire – related to lights).   With respect to **2008 models**, there were at least three electrical fire and related complaints dated July 16, 2014 (electrical fire – cause uncertain); and August 4, 2014 (two complaints – electrical fires – related to lights).

15.    A number of consumer complaints were also filed with the federal National Highway Traffic Safety Administration with respect to electrical fires in 2005-2008 model Suzuki Renos.  Specifically, with respect to **2005 models**, there was at least one electrical fire complaint dated December 1, 2009 (electrical fire – related to lights).  With respect to **2006 models**, there was at least one electrical fire complaint dated August 10,

2012 (electrical fire – related to lights).  With respect to **2008 models**, there was at least one electrical fire complaint dated August 19, 2014 (electrical fire – cause uncertain).

16.     The dates outlined in paragraphs 14-15 above make clear that the American Suzuki Motor Corporation was aware of electrical defects related to lighting causing fires in 2004-2008 model Suzuki Forenzas as early as April 5, 2007 or shortly thereafter and was aware of similar defects in 2005-2008 model Suzuki Forenzas as early as December 1, 2009 or shortly thereafter.

17.     At the very least, the dates outlined in paragraphs 14-15 above also make clear that the American Suzuki Motor Corporation deliberately continued to distribute, market, and sell affected vehicles with a known defect after April 5, 2007 or possibly earlier.

18.     In spite of knowledge of the electrical lighting defect causing fires, which knowledge Defendant Suzuki Motor of America, Inc., had or should have had no later than the first half of 2007, Defendant did not issue a vehicle recall notice to correct the defect until many years later on July 22, 2014.

19.     A recall notice issued to consumers on July 22, 2014 and affecting 184,244 vehicles (**"Recall Notice"**) stated:  "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.  Suzuki Motor Corporation [sic] has decided that a defect which relates to motor vehicle safety exists in certain 2004-2008 Suzuki Forenza and 2005-2008 Suzuki Reno vehicles."  The Recall Notice went on to list "symptoms" of the defect including abnormal headlamp operation, abnormal daytime running lamp operation, unusual odors of heated plastic or wiring insulation, and

6

intermittent vehicle battery discharge.  These were the same "symptoms" that had been complained of by consumers since at least April 5, 2007.

20.     The Recall Notice further stated:  "Affected vehicles may generate heat in the Headlamp Switch or DRL Module, located on or near the left side of the steering column, which could melt the switch or module.   If the heat generated within the Headlamp Switch or DRL Module melts the component, there is an increased risk of fire. You do not need to stop driving your vehicle, however if local driving rules or driving conditions require the use of your headlamps or DRL lighting, Suzuki can not recommend you operate the vehicle if the lighting is not operating as designed.  If you smell unusual odors associated with possible overheated plastic or wire insulation while driving, please safely drive the vehicle off the roadway and exit the vehicle immediately. In addition, avoid parking the vehicle near permanent structures or in a garage until repairs can be performed."  (Emphasis added.)

21.     The Recall Notice further stated that Defendant would repair the defect but added that "Recall service parts are not yet available to correct this condition.  **Providing repair parts is a top priority, however, their availability is not known at this time. Vehicle owners will be notified by mail when repair parts are available and scheduling appointments can then begin.**"  (Emphasis in original.)

22.     Upon information and belief, the Recall Notice was sent to all purchasers of 2004-2008 model Suzuki Forenzas and 2005-2008 Suzuki Renos in the United States, to the best of Defendant's ability.  The Recall Notice states that 184,244 vehicles were affected.  Upon information and belief, no notification has been provided by Defendant to

date with respect to the availability of repair parts or the ability to schedule a repair appointment.

23.     Plaintiff and Class Members have suffered an ascertainable loss of money, property, and/or value of their vehicles subject to the Recall Notice, including diminution of value to such vehicles,

## **GENERAL ALLEGATIONS WITH RESPECT TO PLAINTIFF**

24.     Plaintiff is the owner of a 2007 Suzuki Forenza, VIN KL5JD56Z77K552255 ("Plaintiff's Forenza") which was purchased new by Plaintiff in 2007 from Richardson Suzuki in Oklahoma City, Oklahoma County, Oklahoma.

25.     Plaintiff received a copy of the vehicle Recall Notice referenced in Paragraph 17 above in late July 2014.

26.     Around the same time, the headlamps in the Plaintiff's Forenza began not turning off intermittently when Plaintiff would attempt to switch them off.  On these occasions, the lights would take approximately 20 - 40 minutes to turn off.

27.     On or about the morning of August 18, 2014, Plaintiff left for work driving his Forenza.

28.     Approximately five minutes later, gray smoke started to billow out from behind the dashboard and instrument panel and down by the pedals, primarily on the driver's side of Plainitff's Forenza.

29.     Plaintiff stopped Plaintiff's Forenza immediately, exited the vehicle, and called the fire department.  Plaintiff's Forenza began to fill with smoke and Plaintiff observed some flames as well.

30.     The fire department arrived and put out the fire in Plaintiff's Forenza.  The fire department confirmed that the fire was an electrical fire.

31.     Plaintiff's Forenza was towed to Big Red Sports and Imports in Norman, Oklahoma.  Plaintiff was repeatedly advised by Big Red Sports and Imports as well as by representatives of Defendant that Plaintiff would have to submit an insurance claim to pay for repair of Plaintiff's Forenza.  Defendant did not repair Plaintiff's Forenza or offer to cover the costs of the repair.

32.     In an effort to repair Plaintiff's Forenza, Plaintiff has dealt with his insurance company, Liberty Mutual Insurance.  An October 7, 2014 e-mail from Liberty Mutual Insurance to Plaintiff stated:   "Our appraiser indicated the fire under the instrument panel caused damage to the main harness, fuse box, carpet, trim items. . . . There are about 4 electrical modules that are burnt and Bruce advised that one of them is the one that was recalled for possible fire damage.  We believe the probable cause of the fire to be in the area of the recalled item."

## CLASS ACTION ALLEGATIONS

33.     Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and the following proposed class:

> *All individuals in the United States who purchased or leased any of the motor vehicles (2004-2008 Suzuki Forenzas and 2005-2008 Suzuki Renos) which are the subject of the July 22, 2014 Recall Notice.*

34.     Plaintiff may seek to certify additional subclasses, as the Court would deem appropriate.  Excluded from this Class are: (1) Defendant's legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and his/her

immediate family and staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein and from defects outlined in the Recall Notice.  This action has been brought and may properly be maintained as a class action under Fed. R. Civ. P. 23.

35.     Pursuant to Fed. R. Civ. P. 23(A)(1), Plaintiff states that the proposed class is so numerous that joinder of all members is impracticable as a matter of law because the proposed class consists of the owners or lessees of the 184,244 vehicles that were recalled.  Thus the class consists, at least, of tens of thousands of potential members which is easily ascertainable whose identities can be readily determined from the Recall Notice records themselves and/or other records maintained by Defendant.

36.     Pursuant to Fed. R. Civ. P. 23(A)(2) there are questions of law or fact common to the class that predominate over any questions that may affect only individual Class Members.  The proposed class expressly excludes any and all possible questions of law or fact that require specific and/or individualized inquiries.  Rather, the proposed class encompasses any and all practices or policies of Defendant that were generally applicable to all proposed class members including, but not limited to, breach of express and/or implied warranties with respect to the vehicle defect itself and Defendant's mishandling of the defect and/or recall; whether Defendant is strictly liable to proposed class members for the defect; actions or omissions that exposed recipients of the Recall Notice to an unnecessary risk of danger to person and/or property; and actions or omissions of Defendant that constituted unjust enrichment and/or fraudulent concealment.  Such common questions include:  (1) whether Defendant knew of the

10

vehicle defect and continued to sell vehicles with the defective component; (2) whether the vehicle defect was constituted a breach of express and/or implied warranties; (3) whether Defendant's mishandling of the defect and/or recall constituted a breach of warranty; (4) whether Defendant is strictly liable to consumers of affected vehicles; (5) whether Defendant was negligent to delay issuing a recall notice until July 22, 2014; (6) whether Defendant was negligent in the terms and content of its recall notice; (7) whether Defendant was negligent in issuing a recall notice without simultaneously making a repair available;  (8) whether the acts and/or omissions of Defendant with respect to the proposed class members generally constituted one or more violations of the Oklahoma Consumer Protection Act; and (9) whether the acts and/or omissions of Defendant with respect to the proposed class members generally constituted unjust enrichment and/or fraudulent concealment.

37.    Pursuant to Fed. R. Civ. P. 23(A)(3), Plaintiff's claims against Defendant are typical of the claims of the proposed class because the conduct of Defendant with respect to the defect and recall was identical with respect to Plaintiff as it was with respect to all other proposed class members.  So far as is known at this point, the defect is common to all affected vehicles owned or leased by Class Members and Defendant has sent all proposed Class Members, including Plaintiff, identical copies of a form letter advising recipients of the recall.

38.    Pursuant to Fed. R. Civ. P. 23(A)(4), Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the class.  Plaintiff's interests do not conflict with those of the class and Plaintiff and Plaintiff's counsel will fully and effectively

represent the interests of the class.  Further, Plaintiff's counsel is qualified, experienced, and generally able to conduct this lawsuit and the Plaintiff's interests are not antagonistic to those of the class.

39.     Pursuant to Fed. R. Civ. P. 23(B)(3), the issues of law and fact common to members of the class predominate over any questions affecting only individual members. Therefore, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The legal grievances of proposed class members are common to all class members, including Plaintiff.  If Defendant is liable to any class member on any of the questions of law outlined in Paragraph 36 above, it will automatically be liable to all class members.  Defendant undertook a single course of conduct that resulted in the same liability with respect to all class members.  A class action is clearly superior to the many hundreds or thousands of lawsuits which might be brought, raising the same legal claims against Defendant, burdening the courts, and potentially resulting in unjustly disparate outcomes.  *See also* Fed. R. Civ. P. 23(b)(1)(A).

## COUNT I – VIOLATIONS OF OKLAHOMA UNIFORM COMMERCIAL CODE: BREACH OF EXPRESS AND IMPLIED WARRANTIES

40.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

41.     Oklahoma has adopted the Uniform Commercial Code, including Article 2 governing sales of goods.  12A Okla. Stat. §§ 2-101 *et seq.*

42.     Pursuant to the statutory definitions, Plaintiff and all other proposed class members were "buyers" as defined by 12A Okla. Stat. § 2-103(1)(a); Defendant [for purposes of this claim and all further claims below, "Defendant" shall include both Defendant Suzuki Motor of America, Inc., and its predecessor in interest the American Suzuki Motor Corporation and Plaintiff specifically incorporates all acts and omissions by either entity in Plaintiff's use of the term "Defendant" herein] was a "seller" as defined by 12A Okla. Stat. § 2-103(1)(c) and was a "merchant" as defined by 12A Okla. Stat. § 2-104; and the vehicles purchased by Plaintiff and all other proposed class members were transactions in "goods" as defined by 12A Okla. Stat. § 2-105(1).

43.     Pursuant to 12A Okla. Stat. § 2-313, Defendant's warranty mentioned in paragraph 13 above was an "express warranty" governed by the provisions of the Oklahoma Uniform Commercial Code.

44.     Pursuant to 12A Okla. Stat. § 2-314, an implied warranty of merchantability arose by operation of law with respect to vehicles sold to Plaintiff and all other proposed class members.  Such warranty included the requirement that the vehicles "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purpose for which such goods are used; and (d) run, with the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any."

45.    Defendant breached its express warranty to Plaintiff and all other proposed class members by <u>not</u> furnishing (according to Defendant's own admission in the Recall Notice) a vehicle with working parts and quality workmanship.  Rather, Plaintiff and all other proposed class members were furnished vehicles with a defective component that can cause a serious and dangerous risk of overheating and fire in vehicles distributed, marketed, and sold by Defendant.  Defendant further breached its warranty by not taking affirmative steps to correct the defect as soon as it was discovered by Defendant.  Rather, Defendant waited approximately seven years before bringing the defect to the attention of consumers and still has not, to this day, made any remedy, repair, and/or reimbursement available to said consumers.

46.    Defendant breached the implied warranty of merchantability by furnishing vehicles that did not "pass without objection" (if the vehicles were unobjectionable, then a recall would be unnecessary); were not of "fair average quality"; were not "fit for the ordinary purpose" for which vehicles are used, namely, as a safe and reliable means of transportation; and generally are unsatisfactory, dangerous, and of questionable value to consumers absent a remedy, repair, and/or reimbursement by Defendant.

47.    Therefore, Plaintiff and all other proposed class members have been damaged by Defendant's breach of its express and implied warranties and are entitled to compensation for the same to the extent that the value of the vehicles and/or Defendant's warranties were impaired thereby.

## COUNT II – VIOLATIONS OF FEDERAL
## MAGNUSON-MOSS WARRANTY ACT

48.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

49.     Plaintiff and all other proposed class members are "consumers" as defined at 15 U.S.C. § 2301(3); Defendant is both a "supplier" as defined at 15 U.S.C. §2301(4) an a "warrantor" as defined at 15 U.S.C. § 2301(5); and the vehicles that are the subject of this lawsuit are "consumer goods" as defined at 15 U.S.C. § 2301(1).

50.     Therefore, pursuant to the foregoing paragraph, the warranty claims in this lawsuit are covered by the federal Magnuson-Moss Warranty Act ("the Act"), 15 U.S.C. §§ 2301 *et seq.*, as well as by Oklahoma warranty laws.   Specifically, Defendant's express warranty, as described more fully above, is governed by the provisions of the Act and is a "full warranty" as defined at 15 U.S.C. § 2303(a)(1) and Defendant's implied warranty of merchantability is also governed by the provisions of the Act pursuant to 15 U.S.C. § 2308.   Such implied warranty is of infinite duration for purposes of the Act pursuant to 15 U.S.C. § 2304(a)(2).

51.     As outlined more fully in Count I above, Defendant breached both its express warranty and its implied warranty of merchantability with respect to Plaintiff and all other proposed class members.   Plaintiff specifically incorporates all factual allegations pled herein with respect to Defendant's conduct vis-à-vis its warranties.

52.     Pursuant to 15 U.S.C. § 2310(d), the amounts in controversy of Plaintiff's individual claim and all other proposed class members' individual claims in this matter are each in excess of $25.00; the amount in controversy of all claims to be determined in this suit is in excess of $50,000.00; and the number of named Plaintiffs in this lawsuit will easily exceed one hundred.

53.     Pursuant to 15 U.S.C. § 2310(e), Defendant has had an ample opportunity already to cure its failure to comply with its warranties.  Defendant has admitted that a dangerous defect exists and has, to date, offered no further solution to Plaintiff or to any other proposed class member.   Therefore, any preliminary demand under § 2310(e) would be utterly futile given that, by Defendant's own admission to Plaintiff and to all other proposed class members, there is no "cure" available at this time.   Indeed, Defendant's failure to make such a "cure" available forms part of the basis of this lawsuit.

54.     Therefore, Plaintiff and all other proposed class members have been damaged by Defendant's breach of its express and implied warranties and by Defendant's violations of the Magnuson-Moss Warranty Act and, pursuant to 15 U.S.C. § 2310(d), are entitled to compensation for the same to the extent that the value of the vehicles and/or Defendant's warranties were impaired thereby, as well as attorney fees and any other legal and/or equitable relief that this Court deems appropriate.

## COUNT III – MANUFACTURER'S PRODUCT LIABILITY

55.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

56.     The elements of a claim for manufacturer's product liability in Oklahoma are:  (1) that the Defendant manufactured, sold, or leased the product in question; (2) that the Defendant was in the business of manufacturing, selling, or leasing such products; (3) that the product was defective and was therefore unreasonably dangerous to the user, consumer, and/or to one who might reasonably be expected to be affected by the product; (4) that the product was defective at the time it was manufactured, sold, or leased by the Defendant or when the product left the Defendant's control; (5) that Plaintiff was a person who used, consumed, or could have reasonably been affected by the product; and (6) Plaintiff sustained personal injuries and/or damage to property directly caused by the defect in the product.

57.     With respect to element (1), it is undisputed that Defendant was the distributor, marketer, and seller of the vehicles that are the subject of this lawsuit.

58.     With respect to element (2), it is undisputed that Defendant was in the business of distributing, marketing, and selling such vehicles.

59.     With respect to element (3), Defendant has admitted that the vehicles are defective and dangerous to consumers.

60.     With respect to element (4), Defendant has admitted that the defect was extant in vehicles at the time they were distributed, marketed, and sold by Defendant and

at the time they left Defendant's control.  The facts of the recall speak for themselves with respect to the impossibility that the defect could have arisen after such time.

61.     With respect to element (5), Plaintiff and all other proposed class members were users and consumers of the vehicles that are the subject of this lawsuit.

62.     With respect to element (6), Plaintiff and all other proposed class members have incurred damages that go beyond mere damage to the vehicles themselves.  Rather, Plaintiff and all other proposed class members have been exposed to an unreasonable risk of harm; have been forced to forego driving the vehicles for safety reasons; have suffered a diminution in the value of the vehicles; property damage to their vehicles; and have been placed in an untenable situation in which they are unable to obtain a prompt repair, leading to the stress and mental/emotional distress of being stuck with unsafe vehicles. The facts specific to Plaintiff in this lawsuit starkly demonstrate the extreme risk of danger and loss to which Plaintiff and all other proposed class members have been exposed by Defendant.

63.     Therefore, Defendant should be held strictly liable for the defects in the vehicles that are the subject of this lawsuit and Plaintiff and all other proposed class members should be compensated for their damages accordingly.

## COUNT IV – NEGLIGENCE BY DEFENDANT WITH RESPECT TO DEFENDANT'S VEHICLE RECALL

64.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

18

65.     Oklahoma common law, like the law of most states, recognizes four elements of negligence:  duty, breach of duty, causation, and damages.  *See*, *e.g.*, *Flint Ridge Development Co. v. Benham-Blair & Affiliates, Inc.*, 1989 OK 48.

66.     Defendant has a duty, pursuant to the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 301 *et seq.*, and related federal regulations, as well as other statutory and common law duties, to conduct vehicle recalls in a manner that is safe for consumers of Defendant's vehicles.

67.     Defendant breached said duty to its consumers by:  (1) failing to issue a vehicle recall notice regarding the risk of electrical fire due to vehicle lights until July 22, 2014 in spite of knowledge of such defect as early as April 5, 2007; (2) failing to issue a vehicle recall notice that warned consumers not to drive the vehicles (indeed, the Recall Notice specifically stated "You do not need to stop driving your vehicle" except in certain circumstances); (3) failing to offer immediate repair given the risk of danger to consumers; and (4) failing to perform repairs of such vehicles.

68.     The facts specific to Plaintiff illustrate the consequences of the risk to which Defendant unnecessarily and unreasonably exposed Plaintiff and all other proposed class members:  Plaintiff's Forenza in fact did catch on fire, at great personal risk to Plaintiff, damaging Plaintiff's Forenza and resulting in a costly repair to Plaintiff's Forenza which Defendant refused to pay for.

69.     Defendant's acts and omissions with respect to the vehicle recall have damaged all consumers who were recipients of the Recall Notice by damaging property owned or leased by class members, exposing them unnecessarily to a risk of harm to

themselves and their property, by denying them access to an immediate repair, and by refusing to cover the costs of repairs.  Presently, there are approximately 184,244 vehicles of Defendant on the road which could, at any minute, burst dangerously into flames.  Such risk lowers the value of the vehicles to consumers and exposes them to a dangerous situation without any opportunity for recourse other than giving up operation of the affected vehicles.

70.     Therefore, Defendant should be held liable for its negligent handling of the recall that is the subject of this lawsuit and Plaintiff and all other proposed class members should be compensated for their damages accordingly.

## COUNT V – VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT

71.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

72.     The Oklahoma Consumer Protection Act, first enacted in 1972, provides that it is unlawful, when dealing with a consumer, for a person to  "Commit[] an unfair or deceptive trade practice as defined in Section 752 of this title[.]  15 Okla. Stat. § 753.  The definitions in § 752 are:

13.  "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person.  Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral.

14.  "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers[.]

73.    The Oklahoma Supreme Court has held that "[b]ecause the OCPA is remedial in nature it is to be <u>liberally construed</u> to effectuate its underlying purpose." *Patterson v. Beall*, 2000 OK 92, ¶ 28 (emphasis added).  *Patterson* also lists the "four elements" of an OCPA cause of action:

> (1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991) § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.

*Id.* at ¶ 30.  The *Paterson* court concluded that the protection against an "unfair trade practice" is a "broad protection" and is left "to the courts to determine whether specific conduct qualifies."  *Id.* at ¶ 34.

74.    Plaintiff and prospective class members were all harmed by Defendant's mishandling of its vehicle recall.  Such conduct was in violation of the Oklahoma Consumer Protection Act's prohibitions, including, but not limited to, prohibitions against deceptive practices, practices that are contrary to public policy, and practices that are substantially injurious to consumers.

75.    Defendant engaged in deceptive practices by concealing from consumers a known defect and extreme risk of danger of vehicle fires for approximately seven years before finally issuing a recall notice that made consumers aware of the defect without offering any repair or other solution.

76.     Defendant engaged in practices that are contrary to public policy by botching its recall and failing to repair vehicles in a prompt and safe manner that would have eliminated unnecessary risk to consumers.  For example, vehicle recalls are intended to promote motor vehicle safety as defined in 49 U.S.C. § 301 and as overseen by the National Highway Traffic Safety Administration.  Therefore, a vehicle recall that does not result in promoting the interests of safety is contrary to public policy.

77.     Defendant engaged in practices that are substantially injurious to consumers by failing to timely recall their defective vehicles and then by botching the recall in a manner that exposed consumers to dangerous risks.  The facts of Plaintiff's vehicle fire speak for themselves with respect to the unnecessary and injurious risks imposed on consumers by Defendant.

78.     Therefore, Defendant should be held liable for its violations of the Oklahoma Consumer Protection Act and Plaintiff and all other proposed class members should be compensated for their damages accordingly.

## <u>COUNT VI – UNJUST ENRICHMENT</u>

79.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

80.     In Oklahoma, "[u]njust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, *i.e.*, the party has money in its hands that, in equity and good conscience, it should not be allowed to retain.  Some states define unjust enrichment with four parts:  (1) the unjust

(2) retention of (3) a benefit received (4) at the expense of another." *Department of Securities* ex rel. *Faught v. Blair*, 2010 OK 16, ¶ 22.

81.     This case presents a classic instance of unjust enrichment whereby Defendant accepted payment in full for vehicles which were warranted to be safe, without defect to any components, and merchantable.  Yet the vehicles measured up to none of these promises by Defendant.  Further, Defendant concealed a dangerous defect for seven years and still has not provided a solution to its consumers.  In short, Defendant obtained the benefit of the bargain, but Plaintiff and all other proposed class members did not.  Therefore, Defendant has been unjustly enriched at the expense of Plaintiff and all other proposed class members.

82.     Therefore, this Court should grant Plaintiff and all other proposed class members the remedy of imposing a constructive trust on the monetary benefits unjustly received and retained by Defendant, both in the past and to the present day.  Plaintiff specifically requests that this Court provide whatever legal and/or equitable relief it deems proper, given Defendant's conduct and unlawful retention of funds rightfully belonging to Plaintiff and all other proposed class members.

## COUNT VII – FRADULENT CONCEALMENT

83.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

84.     In Oklahoma, "[f]raudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts and

thereby prevents a discovery of his wrong, of the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud." *Masquat v. DamilerChrysler Corp.*, 2008 OK 67, ¶ 18.

85.     Plaintiff has alleged herein that Defendant knew of the defect that is the subject of this lawsuit as early as 2007 and yet took no steps of any sort to notify Plaintiff or any other proposed class member prior to the summer of 2014 – seven years after the defect was first brought to Defendant's knowledge and attention.  Plaintiff contends that said delay was deliberate and calculated for the purpose of depriving consumers of knowledge of a dangerous defect and the lack of a solution for it.

86.     Defendant should not be permitted by this Court to use its inaction, its deliberate concealment of a known defect, and putting its own consumers in harm's way to argue that the statute of limitations has passed for any of the claims asserted herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members request judgment against Defendant as follows:

A.     Actual, consequential, punitive, and other damages, in an amount to be proven at trial but in excess of $5,000,000.00;

B.     For pre judgment and post interest on such damages;

C.     For expenses of the litigation, including costs and attorney fees;

D.     Certification of the Class;

E.     Appointment of the undersigned as counsel for the Class; and

24

F.      For such other relief as Plaintiff and Class Members may be entitled, including any legal and/or equitable remedies that may be appropriate under the claims asserted above.

Respectfully submitted,

*s/Blake Sonne*_____
Blake Sonne, OBA #20341
SONNE LAW FIRM, PLC
P.O. Box 667
Norman, Oklahoma  73070
(405) 664-2919 (telephone)
(405) 872-8897 (fax)
bsonne21@yahoo.com
sonnelawfirm@yahoo.com

**JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED**