# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

JASON DINWIDDIE, individually and )
on behalf of all others similarly situated, )
                                    )
                 Plaintiff, )
                                    )
vs. )         CASE NO.  CIV-14-1127-W
                                    )
SUZUKI MOTOR OF AMERICA, )
INC., a foreign corporation )
                                    )
                 Defendant. )

## DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

I.  2007:  PLAINTIFF'S PURCHASE OF HIS VEHICLE................................3

II.  JULY 2014: SUZUKI MOTOR NOTIFIED CONSUMERS ABOUT A VOLUNTARY RECALL .............................................................................3

III.  OCTOBER 2014: PLAINTIFF'S COMPLAINT ........................................4

LAW AND ARGUMENT .......................................................................................5

I.  THE EFFECT OF AMERICAN SUZUKI'S BANKRUPTCY AND SUZUKI MOTOR'S ASSUMPTION OF LIMITED LIABILITIES ............6

    A.  Suzuki Motor Assumed Only Certain Warranty and Recall Obligations ..........................................................................................6

    B.  The Bankruptcy Court Approved the APA, Enjoined any Party from Pursuing Suzuki Motor as American Suzuki's Successor in Interest, and Retained Jurisdiction over the APA. ...........................9

II.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM. ...............10

    A.  Standard for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)...................................................................................................10

    B.  Count I: Plaintiff Has Failed to State a Claim Under Oklahoma Warranty Law...................................................................................11

        1.  The Express Warranty Claim (Count I) ...................................11

            a.  The Express Warranty Claim Fails Because the Alleged Problem Occurred After the Warranty Period. ...........................................................................11

            b.  The Express Warranty Claim Fails Because It Is Time-Barred under the Statute of Limitations ..............13

2.    The Implied Warranty Claim (Count I) ....................................14

3.    Plaintiff's Fraudulent Concealment Allegations Cannot Resurrect His Time-Barred Warranty Claims ..........................15

C.    Count II: Plaintiff Has Failed to State a Claim Under the Magnuson-Moss Warranty Act ...........................................................16

D.    Counts III, V, VI, and VII:  Suzuki Motor Did Not Assume Liability For These Claims....................................................................17

E.    Counts III Through VII: Plaintiff Has Failed to State a Claim...........18

1.    The Product Liability Claim (Count III)....................................18

2.    The Negligence Claim (Count IV)............................................19

3.    The Oklahoma Consumer Protection Act Claim (Count V) ..................................................................................22

4.    The Unjust Enrichment Claim (Count VI) ...............................23

5.    The Fraudulent Concealment Claim (Count VII).....................23

III.    ALTERNATIVELY, THE COURT SHOULD STAY THIS MATTER AND ALLOW THE BANKRUPTCY COURT TO DETERMINE WHICH LIABILITIES WERE ASSUMED BY SUZUKI MOTOR UNDER THE APA. ........................................................24

CONCLUSION .........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

## <u>CASES</u>

*Acme Equip. Co., Inc. v. Metro Auto Auction of Kansas City, Inc.,*
    484 F.Supp. 219 (W.D. Okla. 1979)..............................................................15

*AG Equipment Co. v. AIG Life Ins. Co., Inc.*,
    2008 WL 4570319 (N.D. Okla. Oct. 10, 2008)...........................................23

*Alban v. BMW of N. America,*
    2010 U.S. Dist. LEXIS 94038 (D.N.J. Sep. 8, 2010)...................................14

*Alderwoods Group, Inc. v. Garcia*,
    682 F.3d 958 (11th Cir. 2012) .....................................................................25

*Allenberg v. Bentley Hedges Travel Serv., Inc.,*
    22 P.3d 223 (Okla. 2001)..............................................................................18

*Apex Oil Co. v. Sparks (In re Apex Oil Co.),*
    406 F.3d 538 (8th Cir. 2005) .......................................................................25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................... 10, 11

*Ayres v. General Motors Corp.*,
    234 F.3d 514 (11th Cir. 2000) ............................................................... 20, 21

*Ballard v. Johnson & Johnson*,
    2014 U.S. Dist. LEXIS 149381 (N.D. Okla. Oct. 20, 2014).......................13

*Bearden v. Honeywell International, Inc.,*
    720 F.Supp.2d 932 (M.D. Tenn. 2010) .......................................................17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................... 10, 11

*Bush v. American Motors Sales Corp.,*
    575 F.Supp. 1581 (D. Colo. 1984) ..............................................................14

*Clemens v. DaimlerChrysler Corp.,*
534 F.3d 1017 (9th Cir. 2008) ................................................................ 12, 17

*Cuesta v. Ford Motor Co.,*
209 P.3d 278 (Okla. 2009)................................................................................21

*Davisson v. Ford Motor Co.,*
2014 U.S. Dist. LEXIS 122673 (S.D. Ohio Sept. 3, 2014)...........................13

*Deburro v. Apple, Inc.,*
2013 U.S. Dist. LEXIS 156565 (W.D. Tex. Oct. 31, 2013) .........................14

*Dummar v. Lummis,*
543 F.3d 614 (10th Cir. 2008) ......................................................................15

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
66 F.3d 604 (3rd Cir. 1995) ..........................................................................12

*Dutsch v. Searay Boats, Inc.,*
845 P.2d 187 (Okla. 1992)..............................................................................19

*Ermentraut v. State Farm Fire & Cas. Co.,*
2014 U.S. Dist. LEXIS 153052 (D. Colo. Oct. 29, 2014)............................24

*Handy v. General Motors Corp.,*
518 F.2d 786 (9th Cir. 1975). ................................................................. 20, 21

*In re Brownsville Prop. Corp.,*
469 B.R. 216 (Bankr. W.D. Pa. 2012)...........................................................24

*In re Chi., Milwaukee, St. Paul & Pac. R. Co.,*
6 F.3d 1184 (7th Cir. 1993) ...........................................................................25

*In re Ford Tailgate Litig.,*
2014 U.S. Dist. LEXIS 32287 (N.D. Cal. Mar. 12, 2014) .................... 12, 14

*In re Hereford Biofuels, L.P.,*
466 B.R. 841 (Bankr. N.D. Tex. 2012) .........................................................24

*L.W. Environmental Servs. v. Randle Energy Servs.,*
2011 U.S. Dist. LEXIS 35025 (E.D. Okla. Mar. 30, 2011) ..........................22

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1937)........................................................................................24

*Licul v. Volkswagen Group of America, Inc.*,
    2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013).............................17

*Loyal Protective Ins. Co. v. Shoemaker*,
    63 P.2d 960 (Okla. 1936).............................................................................15

*Meserole v. Sony Corp. of America, Inc.*,
    2009 U.S. Dist. LEXIS 42772 (S.D.N.Y. May 18, 2009) ..................... 14, 17

*N.C. Corff P'Ship, Ltd. v. OXY USA, Inc.*,
    929 P.2d 288 (Okla. Civ. App. 1996)..........................................................22

*NMP Corp. v. Parametric Tech. Corp.*,
    958 F.Supp. 1536 (N.D. Okla. 1997) ..........................................................12

*Pereira v. Holmes*,
    2008 U.S. Dist. LEXIS 109019 (N.D. Okla. Sep. 30, 2008).........................15

*Smith v. City of Stillwater*,
    328 P.3d 1192 (Okla. 2014).........................................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................................6

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009).............................................................................. 25, 26

*Turner v. McGee*,
    681 F.3d 1215 (10th Cir. 2012) ...................................................................6

*United Golf, LLC v. Westlake Chem. Corp.*,
    2006 U.S. Dist. LEXIS 57531 (N.D. Okla. Aug. 15, 2006).........................21

*Utah Gospel Mission v. Salt Lake City Corp.*,
    425 F.3d 1249 (10th Cir. 2005) .................................................................11

*Voicheck v. Ford Motor Co.*,
    2013 U.S. Dist. LEXIS 62634 (E.D. Pa. May 2, 2013)................................14

*Waggoner v. Town & Country Mobile Homes, Inc.,*
    808 P.2d 649 (Okla. 1990)...................................................................19

*Walsh v. Ford Motor Co.,*
    807 F.2d 1000 (D.C. Cir. 1986).........................................................17

*Winzler v. Toyota Motor Sales, U.S.A. Inc.,*
    681 F.3d 1208 (10th Cir. 2012) .........................................................22

## **STATUTES**

12A Okla. Stat. § 2-313 ........................................................................11

12A Okla. Stat. § 2-316(2)....................................................................14

12A Okla. Stat. § 2-725 .................................................................. 13, 14

15 Okla. Stat. § 754(2).........................................................................22

15 U.S.C.  § 2301 ............................................................................ 9, 16

15 U.S.C. § 2304(a)(2).........................................................................17

15 U.S.C. § 2308(b) .............................................................................17

28 U.S.C. § 157(b) ...............................................................................24

49 C.F.R. § 577.5 .................................................................................21

49 C.F.R. § 577.7(a)(1).........................................................................21

49 U.S.C.  § 301 ...................................................................................19

49 U.S.C.  § 30101 .................................................................................8

49 U.S.C. § 30118 ................................................................................20

49 U.S.C. §30120....................................................................................4

49 U.S.C. § 30121 (b) ..........................................................................20

## **RULES**

Fed. R. Civ. P. 9(b) ..............................................................................15

Fed. R. Civ. P. 12(b)(6)................................................................................... 1, 5, 10, 25

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Suzuki Motor of America, Inc. ("Suzuki Motor") moves the Court to dismiss the First Amended Class Action Complaint (Doc. 17) (the "Amended Complaint") filed by Plaintiff Jason Dinwiddie ("Plaintiff"). While Plaintiff has added legal arguments in his Amended Complaint, he has not alleged additional facts. Thus, the same legal shortcomings of his lawsuit remain, and the case should be dismissed.

## BRIEF IN SUPPORT

## INTRODUCTION

Plaintiff's Amended Complaint remains a solution in search of a problem. Plaintiff seeks to recover millions of dollars on behalf of himself and a nationwide class of almost two hundred thousand vehicle owners with regard to an alleged vehicle defect. Yet, *prior* to Plaintiff filing suit, a voluntary recall with a free-of-charge repair under the supervision of the National Highway Traffic Safety Administration ("NHTSA") had already been announced.[1]

The party conducting the recall and repair program is Suzuki Motor. Suzuki Motor did not manufacture or distribute a single vehicle subject to the recall (2004-2008 model-year Suzuki Forenzas and 2005-2008 model-year Suzuki Renos), and in fact, Suzuki Motor has never manufactured or distributed any vehicle. Suzuki Motor was not incorporated until October 31, 2012, and did not assume any recall responsibilities until

---

[1] The class definition is co-extensive with the scope of the voluntary recall. Amended Compl. ¶ 39.

2013.  Plaintiff therefore cannot bring suit against Suzuki Motor for alleged defects in vehicles that Suzuki Motor did not manufacture or sell.

Suzuki Motor began operating in 2013, after acquiring certain defined assets and liabilities belonging to a debtor in bankruptcy, American Suzuki Motor Corporation ("American Suzuki").  The transaction between American Suzuki and Suzuki Motor expressly excluded American Suzuki's automobile sales business.  Suzuki Motor agreed to purchase certain assets associated with the post-sale servicing of automobiles previously sold or leased by American Suzuki; however, Plaintiff alleges that all defects were present in the vehicles at the time of sale.  Suzuki Motor assumed a narrow and well-defined subset of American Suzuki's warranty obligations, but the assumed obligations do not include the broad, open-ended product liability that Plaintiff alleges. Additionally, Plaintiff's allegations in the Amended Complaint show that his warranty rights expired years before he experienced a problem—indeed before Suzuki Motor came into existence—and Plaintiff therefore has no viable warranty claims against Suzuki Motor.

In an attempt to avoid this problem, Plaintiff tries to make Suzuki Motor liable for American Suzuki's alleged actions and inactions.  Regardless of what liability American Suzuki may have had, Suzuki Motor's responsibilities are expressly defined by the agreements and orders in the American Suzuki bankruptcy.

## BACKGROUND

### I.    2007:  PLAINTIFF'S PURCHASE OF HIS VEHICLE

Plaintiff alleges that he purchased a new 2007 Suzuki Forenza from a Suzuki dealership in Oklahoma City.  Amended Compl. ¶ 30.  Plaintiff accurately alleges that all vehicles at issue in his lawsuit—including his own vehicle—were "manufactured, marketed, distributed, and/or sold" by American Suzuki.  *Id.* ¶ 15.   He further correctly alleges that each of these vehicles was covered by a 3-year/36,000 mile express warranty. *Id.* ¶ 16.

Plaintiff also alleges that American Suzuki "was already aware of a dangerous Defect existing in Plaintiff's Forenza and all similar vehicles but did not take any steps to inform, warn, or notify Plaintiff prior to, during, or after his purchase of Plaintiff's Forenza of the existence of the Defect or of any effect that the existence of the Defect would have on any warranty, express or implied."  *Id.* ¶ 30.

### II.   JULY 2014: SUZUKI MOTOR NOTIFIED CONSUMERS ABOUT A VOLUNTARY RECALL

As will be discussed in more detail below, with approval of the American Suzuki bankruptcy court, Suzuki Motor contractually assumed certain obligations from American Suzuki with respect to recalls conducted pursuant to the National Traffic and Motor Vehicle Safety Act.  Pursuant to this assumed recall obligation, in July 2014 Suzuki Motor issued a voluntary recall on certain vehicles.  Amended Compl. ¶¶ 25-28. Specifically, Suzuki Motor notified consumers that "certain 2004-2008 Suzuki Forenza and 2005-2008 Suzuki Reno vehicles" were being recalled because of potential problems

with the vehicles' headlamps and daytime running lamps.  *Id.* ¶¶ 25-26.  Under the NHTSA supervised recall, consumers would have this condition repaired free of charge or receive reimbursement for any previous repair of this condition for which they had to pay.  *See, e.g.,* 49 U.S.C. §30120.[2]

Plaintiff alleges that he received a copy of the recall notice.  Amended Compl. ¶ 31.  Plaintiff contends that he began experiencing problems with his vehicle "around the same time."  *Id.* ¶ 32.  Plaintiff alleges that on August 18, 2014, he observed "gray smoke" emanating from the dashboard and instrument panel while driving to work and that the fire department was called.  *Id.* ¶¶ 33-35.  Plaintiff alleges that his vehicle suffered an electrical fire and that his automobile insurer indicated that "[w]e believe the probable cause of the fire to be in the area of the recalled item."  *Id.* ¶¶ 36, 38.

## III.   OCTOBER 2014: PLAINTIFF'S COMPLAINT

Almost two months later, on October 15, 2014, Plaintiff filed his initial Complaint in this matter, claiming that his vehicle is defective.  Doc. 1.  Plaintiff subsequently filed his Amended Complaint on December 29, 2014, in response to Suzuki Motor's Motion to Dismiss.  *See* Doc. Nos. 14, 17-18.  In the Amended Complaint, Plaintiff alleges that he and the putative class "have suffered an ascertainable loss of money, property and/or value of their vehicles subject to the Recall Notice, including diminution of value to such

---

[2] The Amended Complaint alleges that, at the time consumers were initially notified about the recall, repair parts were not available.  Amended Compl. ¶ 27. However, parts were available within days after Plaintiff filed the initial Complaint. http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM466462/RCMN-14V262-0177.pdf.

vehicles and damage to property stemming from overheating and fires in affected vehicles."  Amended Compl. ¶ 29.

Plaintiff seeks to represent a putative nationwide class of all purchasers and lessees of "motor vehicles (2004-2008 Suzuki Forenzas and 2005-2008 Suzuki Renos) which are the subject of the July 22, 2014 Recall Notice."  Amended Compl. ¶ 39.  In other words, the population of vehicles covered by the recall and Plaintiff's proposed class are the same.

Plaintiff asserts seven counts against Suzuki Motor, however these counts all rely on three theories of liability: (1) Suzuki Motor allegedly assumed liability from American Suzuki through a bankruptcy court-approved asset purchase agreement (*e.g.,* Amended Compl. ¶¶ 47, 57, 65, 75, 83); (2) Suzuki Motor is liable as American Suzuki's alleged "successor" (*e.g., id.* ¶¶ 21-23, 49, 92, 94, 98-100); or (3) Suzuki Motor's own actions allegedly give rise to liability (*e.g., id.* ¶¶ 75, 83, 87).

## LAW AND ARGUMENT

Plaintiff's Amended Complaint should be dismissed pursuant  Fed. R. Civ. P. 12(b)(6).  Counts I and II (the warranty claims) are time-barred.  Counts III (product liability), V (Oklahoma Consumer Protection Act), VI (unjust enrichment), and VII (fraudulent concealment) overreach in their effort to make Suzuki Motor liable for the alleged actions and inactions of now-bankrupt American Suzuki, and they also fail to state a claim as a matter of law.  And Count IV (negligence) is predicated on a federal statute that does not provide private citizens with any rights of action.

Because of the impact that the American Suzuki bankruptcy liquidation plan has on Plaintiff's Amended Complaint, the analysis below begins with a discussion of those proceedings. As outlined below, Plaintiff's Amended Complaint fares no better than his original complaint and should be dismissed.

I.   **THE EFFECT OF AMERICAN SUZUKI'S BANKRUPTCY AND SUZUKI MOTOR'S ASSUMPTION OF LIMITED LIABILITIES**

   A.   <u>**Suzuki Motor Assumed Only Certain Warranty and Recall Obligations**</u>

   Five years after Plaintiff purchased his vehicle, American Suzuki "filed for Chapter 11 bankruptcy" on November 5, 2012. Amended Compl. ¶10; *In re American Suzuki Motor Corporation,* No. 8:12-bk-22808 (Bankr. C.D. Calif.). As a part of the bankruptcy process, Suzuki Motor acquired "certain assets and liabilities" of American Suzuki "pursuant to an asset purchase agreement dated March 6, 2013." Amended Compl. ¶10; *see also* Second Amended and Restated Asset Purchase Agreement (*In re American Suzuki Motor Corp.,* No. 8:12-bk-22808 (Bankr. C.D. Calif.), Doc. 1260) ("APA") (attached as Exhibit 1).[3]

   Under the APA, Suzuki Motor did not acquire all of American Suzuki's businesses. Instead, Suzuki Motor agreed to purchase a certain subset of American's Suzuki's former businesses and the assets necessary to conduct those businesses.

------

[3] The Amended Complaint describes the American Suzuki bankruptcy proceedings and quotes from the key provision of the APA relevant to this motion. *E.g.* Amended Compl. ¶¶ 11-12. Furthermore, the Court can take judicial notice of the bankruptcy pleadings and orders for purposes of this motion because they are public record and readily available on the federal court system's Pacer network. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider . . . matters of which a court may take judicial notice" in deciding a Rule 12(b)(6) motion); *Turner v. McGee,* 681 F.3d 1215, 1217, n.2 (10th Cir. 2012).

Specifically, Suzuki Motor acquired American Suzuki's motorcycle and ATV businesses, its marine products business, and its automobile servicing business.  Ex. 1 ¶ B; *accord id.* § 1.1.   Suzuki Motor expressly *excluded* from this transaction American Suzuki's business associated with the "distribution and sale of Suzuki Automotive Products."  *Id.* ¶ B; *accord id.* § 1.2.

Likewise, Suzuki Motor did not assume all of American Suzuki's liabilities. Rather, under the terms of the APA, Suzuki Motor only acquired certain "Assumed Liabilities."  Ex. 1 at § 2.5.  *See also* Ex. 1 at § 2.6 ("Purchaser shall not be obligated to assume or to perform or discharge any Liability of Seller other than the Assumed Liabilities").  These two provisions read together define the universe of American Suzuki liabilities that Suzuki Motor did and did not acquire.  Any American Suzuki liability that was not assumed would remain with American Suzuki, an entity dissolved pursuant to the bankruptcy proceeding and not a party to this lawsuit.

Another limitation on Suzuki Motor's assumption of certain liabilities is the time-bar included in the APA.  Under APA section 2.6(i), "any Liability of Seller [American Suzuki] that arises on or before the Closing Date and is not expressly assumed by Purchaser [Suzuki Motor] in writing" is specifically *excluded*.  Similarly, "all Liabilities relating to the ownership or operation of Purchased Assets or the Acquired Business" are assumed "*to the extent such Liabilities arise solely after the Closing Date*."  Stated differently, Suzuki Motor did not intend to assume any of American Suzuki's liabilities that arose prior to the closing date of the APA unless Suzuki Motor clearly and expressly stated in writing that such liabilities would be assumed.  Thus, because Plaintiff alleges

that Suzuki Motor is liable for American Suzuki's actions (or inaction) stretching back to 2007 (*e.g.,* Amended Compl. ¶¶ 19, 21-22), Plaintiff must show that Suzuki Motor expressly assumed such pre-closing liability.

Perhaps recognizing these limitations in the APA, Plaintiff tries to shoehorn his claims into section 2.5(ii) of the APA, in which Suzuki Motor assumes "all Suzuki Product Liability." *See, e.g.,* Amended Compl. ¶¶ 11-14, 47, 57, 65, 75, 83. In so trying, Plaintiff ignores the fact that "Suzuki Product Liability" is a defined term:

> "***Suzuki Product Liability***" means any Liability of Seller, regardless of whether arising before or after the Petition Date, (i) under Express Warranty Claims on any Suzuki Products; (ii) for recalls and other obligations under the NTMVSA with respect to Suzuki Products; or (iii) under any Lemon Laws with respect to Suzuki Products.

Ex. 1 at 47. Thus, a claim against Suzuki Motor under section 2.5(ii) of the APA must fall within the definition of one of these three enumerated categories.

The first category is "Express Warranty Claim," which is defined as "a claim under a written warranty issued by Seller but, for the avoidance of doubt, excluding claims for personal injury, third party property damage, or consequential damages of any kind." Ex. 1 at 40. Only Plaintiff's Count I, seeking to enforce an express warranty, could potentially implicate this assumed liability (but as discussed below, his warranty rights expired long before this suit was filed).

The second category of potential liability is "for recalls and other obligations under the NTMVSA with respect to Suzuki Products." Ex. 1 at 47. The NTMVSA is defined as "the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. 30101 et seq., as amended." *Id.* at 43. Only Count IV (alleging negligence in connection with the

voluntary recall now underway) could potentially implicate this assumed liability, although as noted below, that obligation is owed only to the government.

The third category of assumed liability is "under any Lemon Laws with respect to Suzuki Products." Ex. 1 at 47. "Lemon Law" is also a defined term meaning "the Magnuson-Moss Warranty Act, any similar state laws, as amended, and any rules or regulations promulgated pursuant thereto, as amended." *Id.* at 42. The "Magnuson-Moss Warranty Act" is defined as "15 U.S.C. Section 2301 *et seq.*, as amended." *Id.* Only Counts I and II, alleging violations of Oklahoma warranty law and the Magnuson-Moss Warranty Act, could potentially implicate this assumed liability (but, as noted below, the warranty rights are time-barred).

In other words, in clear and unambiguous terms, "Suzuki Product Liability" did not include the universe of product defect claims alleged by the Plaintiff. It included only certain limited warranty and recall obligations.

### B. The Bankruptcy Court Approved the APA, Enjoined any Party from Pursuing Suzuki Motor as American Suzuki's Successor in Interest, and Retained Jurisdiction over the APA.

On March 15, 2013, the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") entered a final order confirming American Suzuki's plan of liquidation. *See In re American Suzuki Motor Corp.,* No. 8:12-bk-22808 (Bankr. C.D. Calif.), Doc. 1288 ("Final Confirmation Order") (attached as Exhibit 2). In the Final Confirmation Order, which is now a final judgment, the Bankruptcy Court: (1) approved the APA between American Suzuki and Suzuki Motor in all respects; (2) enjoined any individual or entity from attempting to pursue recovery against Suzuki

Motor as American Suzuki's alleged successor in interest; and (3) retained jurisdiction over all aspects of the liquidation plan.  Ex. 2 at ¶¶ 4, 12-17, 43, 48.

In addition to the Final Confirmation Order, the Bankruptcy Court issued certain findings of fact and conclusions of law.  *See In re American Suzuki Motor Corp.,* No. 8:12-bk-22808 (Bankr. C.D. Calif.), Doc. 1287 ("Conclusions of Law") (attached as Exhibit 3).  In these Conclusions of Law, the Bankruptcy Court expressly held that Suzuki Motor's acquisition under the APA did not carry with it successor liability.  Ex. 3 at ¶ 42.  Moreover, the Bankruptcy Court held that "[f]ollowing the sale, the Purchaser will not be a successor or mere continuation of the Debtor.  By way of example, the Purchaser is not acquiring the Debtor's Auto Sales Business which is being wound down under the Plan and the Purchaser will therefore not be engaged in the sale of new automobiles."  *Id.* at ¶ 43; *accord id.* at ¶ 44 ("The Purchaser is not an alter ego of the Debtor.").

Taken together, the terms of the APA and the findings of the Bankruptcy Court define a clear set of liabilities assumed by Suzuki Motor and, equally important, identify liabilities that remained with American Suzuki.

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM.

### A.   Standard for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Dismissal is appropriate when a plaintiff's complaint fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility "calls for enough fact to raise a reasonable expectation that discovery would reveal evidence" to establish liability.  *Twombly,* 550 U.S. at 556.  Further, under Rule 12(b)(6), a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal,* 556 U.S. at 678.

**B.**   **Count I: Plaintiff Has Failed to State a Claim Under Oklahoma Warranty Law**

Count I alleges breach of an express warranty provided to purchasers of the subject vehicles and breach of implied warranties under Oklahoma's version of the Uniform Commercial Code (*e.g.,* Amended Compl. ¶ 46).

**1.** *The Express Warranty Claim (Count I)*

In Count I, Plaintiff brings an express warranty claim against Suzuki Motor under 12A Okla. Stat. § 2-313.  Amended Compl. ¶ 50.  The claim should be dismissed for two equally compelling reasons: the alleged defect manifested itself after the warranty period and Plaintiff's claim is untimely under the applicable statute of limitations.

**a.**   **The Express Warranty Claim Fails Because the Alleged Problem Occurred After the Warranty Period.**

Plaintiff agrees that the express warranty provided with his vehicle was limited in duration to three years or 36,000 miles.  Amended Compl. ¶ 16.  The written warranty for

Plaintiff's vehicle is attached to Exhibit 4 (Declaration of Alexander G. Butt).[4]   It

provides as follows:

> **NEW VEHICLE LIMITED WARRANTY**
> **WHAT IS COVERED**
>
> SUZUKI provides this warranty for new 2007 vehicles.  This warranty
> covers all parts of the vehicle as supplied by SUZUKI.  Needed repairs to
> correct defects in material or workmanship during the manufacture of the
> vehicle will be made at no charge for parts and labor . . .
>
> * * *
>
> The warranty for all components, other than those listed below, are covered
> by this new vehicle limited warranty for 36 months or 36,000 miles,
> whichever comes first.

Exhibit 4 at 5.  Thus, the express warranty does not warrant that a vehicle is defect-free.

Rather, it is a "limited warranty" of *repair* within a defined duration.

Plaintiff does not have an express warranty claim because, according to Plaintiff's

own allegations, the alleged defect at issue manifested itself years after the expiration of

the written warranty.  The duration of Plaintiff's express warranty was the earlier of 36

months or 36,000 miles.  Plaintiff alleges that he purchased his vehicle in 2007

(Amended Compl. ¶ 30), so the warranty expired no later than the end of ***2010***.  Yet

Plaintiff alleges that he did not experience any problems before July ***2014***. *Id.* ¶¶ 32-35.

Courts have repeatedly held that a plaintiff cannot bring a claim on the basis of an

express warranty that has already expired. *See, e.g., Clemens v. DaimlerChrysler Corp.,*

534 F.3d 1017, 1023 (9th Cir. 2008); *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66

---

[4] "[A] document central to the plaintiff's claim and referred to in the complaint"
may be considered in deciding a motion to dismiss. *Utah Gospel Mission v. Salt Lake
City Corp.,* 425 F.3d 1249, 1253-54 (10th Cir. 2005).

F.3d 604, 616 (3rd Cir. 1995).[5]  The court in *Clemens* described the rationale for this approach:

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life.  If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires.  The product has performed as expressly warranted.

534 F.3d at 1023.

The same analysis applies here, and thus Plaintiff's express warranty claim should be dismissed.  On the face of the Amended Complaint, Plaintiff purchased a new vehicle in 2007.  The alleged defect in Plaintiff's vehicle arose in 2014.  By that date, the warranty had long expired.[6]

### b.    The Express Warranty Claim Fails Because It Is Time-Barred under the Statute of Limitations

The express warranty claim fails for a second reason:  it is barred by the five-year statute of limitations.  *See* 12A Okla. Stat. § 2-725.  Under the UCC, the statute of limitations period begins to run from the time of sale.  *See id.* § 2-725(2).  Thus, Plaintiff's express warranty claim is barred because more than five years ran between the

---

[5]  *See also In re Ford Tailgate Litig.,* 2014 U.S. Dist. LEXIS 32287, *12-14 (N.D. Cal. Mar. 12, 2014) (applying Oklahoma law); *NMP Corp. v. Parametric Tech. Corp.,* 958 F.Supp. 1536, 1549 (N.D. Okla. 1997) (applying Massachusetts law).

[6]  Plaintiff alleges that "Defendant" "breached its express warranty" because it allegedly knew of the alleged defect at the time the vehicle was sold in 2007.  Amended Compl. ¶ 52.  The reference to "Defendant" could not mean Suzuki Motor because it was not incorporated until October 31, 2012.  Exhibit 3 at ¶ 32.  Moreover, whether or not "Defendant" knew of the alleged defect at the time of sale is irrelevant to an express warranty claim.  *See, e.g., Davisson v. Ford Motor Co.,* 2014 U.S. Dist. LEXIS 122673, *24 (S.D. Ohio Sept. 3, 2014).

purchase in 2007 and the filing of suit in 2014 "regardless of the aggrieved party's lack of knowledge." *Ballard v. Johnson & Johnson*, 2014 U.S. Dist. LEXIS 149381, *14 (N.D. Okla. Oct. 20, 2014).

### 2.    *The Implied Warranty Claim (Count I)*

In Count I, Plaintiff also brings an implied warranty claim under 12A Okla. Stat. § 2-314 (implied warranty of merchantability).  Amended Compl. ¶¶ 51, 53.  However, the implied warranty claim fails for the same reasons noted above for the express warranty claim.

First, the written warranty at issue contains an explicit limitation on the duration of the implied warranty for Plaintiff's vehicle, which is set out in capital letters:

> ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL BE LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY.

Exhibit 4 at 6.  In other words, the implied warranty obligation is limited to the same three-year/36,000 mile duration as the express warranty.  *See* Exhibit 4 at 5.

Oklahoma law allows such limitations on implied warranties and courts have routinely upheld similar limitations on implied warranty obligations.  12A Okla. Stat. § 2-316(2).[7]  Thus, Plaintiff's implied warranty claim is improper as a matter of law because

---

[7]    *See In re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 32287 at *15-18 (applying Oklahoma law); *Deburro v. Apple, Inc.*, 2013 U.S. Dist. LEXIS 156565, *17-19 (W.D. Tex. Oct. 31, 2013); *Voicheck v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 62634, *13 (E.D. Pa. May 2, 2013); *Alban v. BMW of N. America*, 2010 U.S. Dist. LEXIS 94038, *29-30 (D.N.J. Sep. 8, 2010); *Meserole v. Sony Corp. of America, Inc.*, 2009 U.S. Dist. LEXIS 42772, *28-30 (S.D.N.Y. May 18, 2009); *Bush v. American Motors Sales Corp.*, 575 F.Supp. 1581, 1583 (D. Colo. 1984).

the implied warranty expired in 2010—three years after the purchase in 2007 and several years before Plaintiff alleges that he encountered a problem with his vehicle in 2014.

Second, Plaintiff's implied warranty claim should be dismissed because it is barred by Oklahoma's five year statute of limitations.  12A Okla. Stat. § 2-725.  For an implied warranty claim, limitations begins running from the date of purchase.  *See, e.g., Acme Equip. Co., Inc. v. Metro Auto Auction of Kansas City, Inc.,* 484 F.Supp. 219, 221 (W.D. Okla. 1979).  Thus, the implied warranty claim is barred under the five-year statute of limitations because seven years passed between the purchase of the vehicle and the filing of suit.

### 3.     *Plaintiff's Fraudulent Concealment Allegations Cannot Resurrect His Time-Barred Warranty Claims*

Plaintiff attempts to avoid the impact of the statute of limitations on his warranty claims by alleging fraudulent concealment—without factual allegations sufficient to support such a theory.  *E.g.,* Amended Compl. ¶¶ 54, 98-106.  Fraudulent concealment requires "affirmative acts" of concealment and "mere failure to disclose" is insufficient to prevent the running of the statute of limitations.  *Pereira v. Holmes,* 2008 U.S. Dist. LEXIS 109019, *10 n.6 (N.D. Okla. Sep. 30, 2008); *Loyal Protective Ins. Co. v. Shoemaker*, 63 P.2d 960, 961 (Okla. 1936).  In this case, Plaintiff alleges only that American Suzuki and Suzuki Motor "took no steps of any sort to notify Plaintiff or any other proposed class member" of the alleged defect "prior to the summer of 2014." Amended Compl. ¶ 101.  Plaintiff does not allege that those entities undertook

affirmative acts to further the alleged scheme.[8]  At most, Plaintiff alleges that Suzuki Motor (apparently through some undefined imputed knowledge) knew about the problem and did not act to correct it.  *Id.* ¶¶ 17-21.  The alleged failure to disclose information does not provide a plausible basis for concluding that Suzuki Motor fraudulently concealed the alleged defect.

In addition, even if Plaintiff adequately alleged fraudulent concealment, Suzuki Motor did not assume American Suzuki's liabilities relating to these allegedly fraudulent acts.  The five-year limitations period for Plaintiff's warranty claim ended in 2012—a year before the APA between Suzuki Motor and American Suzuki.  Plaintiff cannot extend that period without attempting to hold Suzuki Motor responsible for American Suzuki's alleged fraudulent acts.  Suzuki Motor did not assume such responsibility, and the Bankruptcy Court explicitly enjoined any party from attempting to hold Suzuki Motor liable as American Suzuki's successor in interest.  *E.g.*, Exhibit 2 at ¶ 43.  Accordingly, Plaintiff's fraudulent concealment allegations are insufficient to resurrect the time-barred warranty claims.

## C.   Count II: Plaintiff Has Failed to State a Claim Under the Magnuson-Moss Warranty Act

In Count II, Plaintiff asserts a claim against Suzuki Motor for alleged violation of the Magnuson-Moss Warranty Act (15 U.S.C.  § 2301, *et seq.*) ("MMWA").  Amended

---

[8] And Plaintiff certainly has not made such allegations with the particularity required under the heightened pleading standard in Fed. R. Civ. P. 9(b).  *See Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (the heightened pleading requirement applies to fraudulent concealment allegations).

Compl. ¶¶ 56-63. However, it is well settled that "claims under the Magnuson-Moss Act stand or fall with . . . express and implied warranty claims under state law.  Therefore, . . . disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Clemens,* 534 F.3d at 1022.[9]  Because Plaintiff's express and implied warranty claims fail under state law, his MMWA claim similarly fails.

Plaintiff alleges without factual support that the express warranty offered by American Suzuki (and assumed by Suzuki Motor under the APA) is a "full" warranty and, as such, that the implied warranties cannot be limited pursuant to 15 U.S.C. § 2304(a)(2).  Amended Compl. ¶ 59.  The written warranty provided to Plaintiff was clearly designated as a "limited" warranty.  Ex. 4 at 3, 5-6 (referring to the warranty as a "New Vehicle Limited Warranty").  Since the warranty is a limited warranty, it may impose a limitation on the duration of any implied warranties.  15 U.S.C. § 2308(b); *accord* Ex. 4 at 6 (stating in capital letters that the duration of any implied warranty of merchantability or fitness is limited to the duration of the express warranty).

For these reasons, Plaintiff's MMWA claim should be dismissed.

### D.   Counts III, V, VI, and VII:  Suzuki Motor Did Not Assume Liability For These Claims

As described above, Suzuki Motor acquired only certain, defined "Assumed Liabilities" in the American Suzuki bankruptcy.  For purposes of this case, those

---

[9]   *See also Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C. Cir. 1986); *Licul v. Volkswagen Group of America, Inc.,* 2013 U.S. Dist. LEXIS 171627, *10-11 (S.D. Fla. Dec. 5, 2013); *Bearden v. Honeywell International, Inc.,* 720 F.Supp.2d 932, 937-38 (M.D. Tenn. 2010); *Meserole,* 2009 U.S. Dist. LEXIS 42772, *32.

liabilities included only obligations for "Express Warranty Claims," "any Lemon Laws," and "recalls and other obligations under the NTMVSA." Exhibit 1 at 9, 47. These terms obviously do *not* include claims for product liability (Count III), violations of the Oklahoma Consumer Protection Act (Count V), unjust enrichment (Count VI), and/or fraudulent concealment (Count VII).

In each of these counts, Plaintiff attempts to broaden the scope of the APA beyond its terms. *E.g.,* Amended Compl. ¶¶ 65 (ignoring the fact that "Suzuki Product Liability" is a defined term and arguing that Suzuki Motor generally assumed product liability claims); 83 (ignoring the fact that "Lemon Laws" is a defined term relating to the MMWA and arguing that Suzuki Motor generally assumed claims relating to consumer protection laws); 92 (ignoring the fact that Suzuki Motor expressly excluded American Suzuki's automobile sales and distribution business from the assets it was acquiring); 98-101 (ignoring that the Bankruptcy Court expressly held that Suzuki Motor is not a successor in interest to or alter ego of American Suzuki).

Simply put, Suzuki Motor did not assume any form of liability for the types of issues alleged in Counts III, V, VI, and VII. Plaintiff cannot impute liability to Suzuki Motor based on any alleged conduct of American Suzuki, and these counts should be dismissed on this ground alone.

### E.   Counts III Through VII: Plaintiff Has Failed to State a Claim

#### 1.   *The Product Liability Claim (Count III)*

Plaintiff's product liability claim in Count III fails to state a claim because Suzuki Motor was not the manufacturer or otherwise in the chain of distribution, which is a

threshold prerequisite for a product liability claim in Oklahoma. *Allenberg v. Bentley Hedges Travel Serv., Inc.,* 22 P.3d 223, 227 (Okla. 2001). Plaintiff attempts to avoid this insurmountable deficiency by stating that "Defendant expressly assumed the liabilities of the distributor, marketer or seller of the vehicles that are the subject of this lawsuit." Amended Compl. ¶ 67; *see also id.* ¶¶ 9, 15 (identifying American Suzuki as the manufacturer and seller of the automobiles at issue in the lawsuit). Plaintiff's statement is incorrect. Suzuki Motor expressly excluded liability "relating to the Excluded Assets" (Ex. 1 § 2.6(iv)), which are defined to include the automobiles sold and distributed by American Suzuki. *Id.* § 1.2(a). Since Suzuki Motor does not meet the threshold requirements for Oklahoma's product liability law, Plaintiff's claim fails as a matter of law.

Count III also fails under Oklahoma's "economic loss rule," which says that a product liability theory is not available when the alleged damage is to the product itself. *Dutsch v. Searay Boats, Inc.,* 845 P.2d 187, 193-94 (Okla. 1992). In such circumstances, "any recovery must be based upon the contractual relationship, specifically the warranty provisions, express or implied." *Waggoner v. Town & Country Mobile Homes, Inc.,* 808 P.2d 649, 653 (Okla. 1990). Thus, any claim for damages to the product itself under this Count should be dismissed.

### 2. *The Negligence Claim (Count IV)*

In Count IV, Plaintiff alleges that Suzuki Motor has been negligent in fulfilling its recall obligations: "Defendant has a duty, pursuant to the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 301 [*sic*] *et seq*., and related federal regulations, as

well as other statutory and common law duties, to conduct recalls in a manner that is safe for consumers . . ."  Amended Compl. ¶ 77.  However, according to the APA, Suzuki Motor only assumed recall obligations "under the NTMVSA"—that is, the federal regulatory scheme pursuant to which NHTSA administers motor vehicle recalls.  Ex. 1 at 47.

To prevail on his negligence claim under Oklahoma law, Plaintiff must prove that Suzuki Motor owed Plaintiff a duty of care, breached that duty, and that such breach proximately caused Plaintiff's injuries.  *Smith v. City of Stillwater*, 328 P.3d 1192, 1200 (Okla. 2014).  "If the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law."  *Id.*   In this case, the duty alleged—to properly conduct a vehicle recall—is not a duty owed ***to the Plaintiff***.  It is well-settled that the duty to conduct a recall arising under the NTMVSA is a duty owed to the federal government.  "Congress did not intend to create private rights of action in favor of individual purchasers of motor vehicles when it adopted the comprehensive system of regulation to be administered by NHTSA."  *Handy v. General Motors Corp.,* 518 F.2d 786, 788 (9th Cir. 1975).

If Suzuki Motor (or any other party conducting a recall pursuant to the NTMVSA) is negligent in the conduct of the recall, it is the federal government that is empowered to take action—not private consumers.  *See* 49 U.S.C. § 30121 (b); *accord Ayres v. General Motors Corp.*, 234 F.3d 514, 523 (11th Cir. 2000) ("[T]he extensive array of administrative remedies, including participation there by 'interested parties,' and the

specific provision authorizing the Attorney General to bring a civil enforcement action create a strong inference that Congress did not intend to create a private right of action.").

Moreover, recalls under the NTMVSA are subject to extensive statutory and regulatory requirements and oversight.  *E.g.,* 49 U.S.C. §§ 30118-30120; 49 C.F.R. part 577.  Any duty to conduct a recall under the NTMVSA necessitates compliance with the NTMVSA in the manner in which the recall is conducted.  Plaintiff alleges that Suzuki Motor's recall notice was not timely, did not include necessary information regarding continued operation of the vehicle, and did not offer to immediately repair the vehicle.  Amended Compl. ¶ 78.  Each of these allegations touches upon an area of the NTMVSA governed by specific regulation.  *E.g.,* 49 C.F.R. § 577.7(a)(1) (timing of recall notice and timing of repairs); and *id.* at § 577.5 (content of notification).  Similarly, the allegation that the repair offered is inadequate (Amended Compl. ¶ 78) is governed by 49 C.F.R. § 577.5(g)(1).  Allowing Plaintiff to assert a different standard of care than the one explicitly stated in the NTMVSA statute and regulations "would be inconsistent with the legislative scheme of the Safety Act.  Implying such a private cause of action to enforce the notification requirements would undermine the administrative remedies."  *Ayres*, 234 F.3d at 524.

The statutory text of the NTMVSA, as well as the analysis in *Handy* and *Ayres*, confirm that Plaintiff cannot maintain a negligence claim based on a duty created by the

NTMVSA.  Any such duties are owed to the federal government and not to Plaintiff.
Thus, Plaintiff's negligence claim fails.[10]

### 3.     *The Oklahoma Consumer Protection Act Claim (Count V)*

The Oklahoma Consumer Protection Act ("OCPA") claim in Count V similarly
fails.  First, Plaintiff has tied the claim to Suzuki Motor's alleged mishandling of the
recall.  Amended Compl. ¶¶ 86-89.  As a result, the OCPA claim should be dismissed for
the same reason as the negligence claim: it is an attempt to assert a private right of action
under the NTMVSA and contravene the controlling statutory and regulatory framework.

Second, the OCPA would not apply here because, by its very terms, the OCPA
does not apply to "[a]ctions or transactions regulated under laws administered by . . . any
other regulatory body or officer acting under statutory authority of this state or the United
States."  15 Okla. Stat. § 754(2).  Suzuki Motor is acting under NHTSA's supervision
and the federal regulations in the recall process.  *See generally Winzler v. Toyota Motor
Sales, U.S.A. Inc.,* 681 F.3d 1208 (10th Cir. 2012) (describing the extensive federal
regulatory provisions governing a voluntary recall).  For these reasons, Count V should
be dismissed.

---

[10] The negligence claim would also be barred by the economic loss rule.  *See, e.g.,
Cuesta v. Ford Motor Co.,* 209 P.3d 278, 279 n. 4 & 284 n. 14 (Okla. 2009) (noting that
negligence claims under Oklahoma law require proof of personal injury and/or damage to
property other than the alleged defective property itself in order to be actionable); *United
Golf, LLC v. Westlake Chem. Corp.,* 2006 U.S. Dist. LEXIS 57531, *8-16 (N.D. Okla.
Aug. 15, 2006).

#### 4.     *The Unjust Enrichment Claim (Count VI)*

"In Oklahoma, a party can only recover for unjust enrichment by showing 'enrichment to another coupled with a resulting injustice.'"  *L.W. Environmental Servs. v. Randle Energy Servs.,* 2011 U.S. Dist. LEXIS 35025, *7 (E.D. Okla. Mar. 30, 2011). Thus, Plaintiff must demonstrate that Suzuki Motors has received a benefit at Plaintiff's expense.  *See N.C. Corff P'Ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996).

Plaintiff alleges that American Suzuki was enriched by "accept[ing] payment in full for vehicles which were warranted to be safe, without defect to any components, and merchantable."  Amended Compl. ¶ 94.  Plaintiff then tries to impute this allegation to Suzuki Motor.  *Id.*  As discussed above, Suzuki Motor did not acquire any of the assets relating to American Suzuki's automobile sales and distribution business.  Even if American Suzuki were to have profited from selling allegedly defective automobiles, none of those profits was acquired by Suzuki Motor.  Accordingly, Suzuki Motor has not been unjustly enriched by the sale of the automobiles at issue in the lawsuit and Count VI should be dismissed.

#### 5.     *The Fraudulent Concealment Claim (Count VII)*

As explained in section II.B.3, *supra*, Plaintiff's allegations of fraudulent concealment fail as a matter of law.  Additionally, "fraudulent concealment is typically raised as a response to a statute of limitations defense, rather than as a separate claim for relief."  *AG Equipment Co. v. AIG Life Ins. Co., Inc.*, 2008 WL 4570319, *3 (N.D. Okla.

Oct. 10, 2008).  Plaintiff concedes as much.  Amended Compl. ¶ 97.  Accordingly,

fraudulent concealment is not a separate claim and Count VII should be dismissed.

## III.   ALTERNATIVELY, THE COURT SHOULD STAY THIS MATTER AND ALLOW THE BANKRUPTCY COURT TO DETERMINE WHICH LIABILITIES WERE ASSUMED BY SUZUKI MOTOR UNDER THE APA.

Suzuki Motor submits that the APA unambiguously limits Suzuki Motor's

assumption of liabilities to the limited warranty and recall obligations discussed above.

However, if the Court finds the APA ambiguous on any material issue, Suzuki Motor

respectfully requests that the Court stay this matter and allow the Bankruptcy Court to

interpret its own orders and determine which liabilities relevant to this matter were

assumed by Suzuki Motor.

This Court has discretion to grant a reasonable stay of any case pending before it.

*See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1937); *Ermentraut v. State Farm Fire &*

*Cas. Co.*, 2014 U.S. Dist. LEXIS 153052, *2 (D. Colo. Oct. 29, 2014).  A brief stay of

this case for the purpose of allowing the Bankruptcy Court to interpret its orders would

conserve judicial resources, insure uniformity in interpreting the documents governing

Suzuki Motor's assumed liabilities, and cause no prejudice.

Under 28 U.S.C. § 157(b), the Bankruptcy Court had core jurisdiction to enter the

APA and confirm the American Suzuki liquidation plan pursuant to the terms of the

Bankruptcy Code.  Any dispute concerning the APA or the liquidation plan arises under

the Bankruptcy Code, or arises in a case under the Bankruptcy Code, and the Bankruptcy

Court therefore has core jurisdiction under 28 U.S.C. §§ 157(b) and 1334(b).  *See In re*

*Hereford Biofuels, L.P.*, 466 B.R. 841, 844 (Bankr. N.D. Tex. 2012) (post-confirmation

dispute regarding interpretation and enforcement of a sale order was a core proceeding).[11]
The American Suzuki bankruptcy court expressly retained jurisdiction over all aspects of the liquidation plan.  Exhibit 2 at ¶ 48.

Other federal courts have observed that it is desirable for bankruptcy courts to interpret their own orders for the sake of consistency.  *See, e.g., Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012); *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542 (8th Cir. 2005); *In re Chi., Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d 1184, 1194 (7th Cir. 1993).  Additionally, a bankruptcy court's interpretation of its own orders is entitled to substantial deference.  *Travelers Indem. Co.*, 557 U.S. at 151 n.4.  Therefore, while Suzuki Motor believes the APA and bankruptcy orders are clear on their face, to the extent the Court finds a material ambiguity, Suzuki Motor respectfully requests that the Court allow the Bankruptcy Court an opportunity to interpret its own orders.

## **CONCLUSION**

For the foregoing reasons, Suzuki Motor requests that Plaintiff's Amended Complaint be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

---

[11] S*ee also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders"); *In re Brownsville Prop. Corp.*, 469 B.R. 216, 223 (Bankr. W.D. Pa. 2012) ("the gravamen of Falck's action . . . is so interwoven with and inseparable from the various orders this Court has previously entered . . . as to squarely fall within the Court's well-recognized power to interpret and enforce its own orders.").

Submitted this 2nd day of February, 2015.


> _s/Reid E. Robison_
> Reid E. Robison, OBA #7692
> Michael K. Avery, OBA #22476
> Patrick L. Stein, OBA #30737
> MCAFEE & TAFT A Professional Corporation
> Tenth Floor, Two Leadership Square
> 211 N. Robinson Avenue
> Oklahoma City, OK 73102-7103
> Telephone: (405) 235-9621
> Facsimile: (405) 235-0439
> reid.robison@mcafeetaft.com
> michael.avery@mcafeetaft.com
> patrick.stein@mcafeetaft.com
>
> - and -
>
> Thomas A. Casey, Jr., La. Bar #01291
> _Admitted Pro Hac Vice_
> Michael C. Drew, La. Bar #30884
> _Admitted Pro Hac Vice_
> JONES WALKER LLP
> 201 St. Charles Avenue
> New Orleans, LA 70170
> Telephone:  (504) 582-8294
> Facsimile:  (504) 582-8011
> tcaseyjr@joneswalker.com
> mdrew@joneswalker.com
>
> **Attorneys for Defendant Suzuki Motor of America, Inc.**

## CERTIFICATE OF SERVICE

This certifies that on the 2nd day of February, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing.  A Notice of Electronic Filing will be automatically transmitted via email to the following ECF registrant:

Blake Sonne
SONNE LAW FIRM, PLC
P.O. Box 667
Norman, OK 73070
Telephone:  (405)664-2929
Facsimile:  (405) 321-8897
bsonne21@yahoo.com
**Attorney for Plaintiff**

*s/Reid E. Robison*

Reid E. Robison