IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

**FILED**

MAY 27 2015

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

JASON DINWIDDIE, individually and )
on behalf of all others similarly situated, )
                                          )
              Plaintiff,                  )
                                          )
vs.                                       )          No. CIV-14-1127-W
                                          )
SUZUKI MOTOR OF AMERICA, INC.,            )
                                          )
              Defendant.                  )

## ORDER

This matter comes before the Court on the Motion to Dismiss First Amended Class

Action Complaint filed by defendant Suzuki Motor of America, Inc. ("Suzuki Motor").

Plaintiff Jason Dinwiddie[1] has responded, and Suzuki Motor has filed a reply. Based upon

the record, the Court makes its determination.

To the extent Suzuki Motor has challenged the factual sufficiency of Dinwiddie's

allegations in his first amended complaint under Rule 12(b)(6), F.R.Civ.P., the United

States Supreme Court has set forth the standards that this Court must use in determining

whether those challenges have merit.  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544

(2007), the Supreme Court held in accordance with Rule 8, F.R.Civ.P., that a complaint

need not contain "heightened fact pleading of specifics," 550 U.S. at 570, or "detailed

---

[1]Dinwiddie brought this action on his own behalf as well as on behalf of others similarly
situated; he seeks to represent a nationwide class of all purchasers and lessees of "motor vehicles
(2004-2008 Suzuki Forenzas and 2005-2008 Suzuki Renos) which are the subject of [a] . . . July
22, 2014 Recall Notice." Doc. 17 at 14, ¶ 39.  No request for class certification has been made,
and while the absence of such a request does not abrogate the Court's duties under Rule 23(c),
F.R.Civ.P., it does suggest that Dinwiddie has no objection either to the Court's consideration of
Suzuki Motor's instant request for dismissal or to the Court's examination of only those allegations
advanced in support of Dinwiddie's individual claims for relief.

factual allegations," id. at 555 (citations omitted), but that it must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

The United States Court of Appeals for the Tenth Circuit has stated that Twombly imposes a "burden . . . on the plaintiff to frame a '[pleading] . . . with enough factual matter (taken as true) to suggest' that he . . . is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Twombly, 550 U.S. at 556). The allegations in the first amended complaint[2] must therefore "be enough that, if assumed to be true, . . . [Dinwiddie] plausibly (not just speculatively) has a claim for relief [against Suzuki Motor]." Id. (footnote omitted).

The Court's task at this stage is to determine whether "there are well-pleaded factual allegations," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), in the challenged pleading; if so, the "[C]ourt should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a [pleading] . . . pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 678 (citations omitted).

In this connection, the first amended complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery

---

[2]"The [C]ourt's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" Swoboda v. Dubach, 992 F.2d 286, 290 (10th Cir. 1993)(quotation omitted)(emphasis deleted).



under some viable legal theory.'" Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and further citation omitted). While "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011)(citations omitted), neither "'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, . . . suffice." Id. (citing Twombly, 550 U.S. at 555). "[T]he Twombly/Iqbal standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012).

"[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555 (further citation omitted)), and more than "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' . . . ." Kansas Penn Gaming, 656 F.3d at 1214 (quoting Twombly, 550 U.S. at 555). If the plaintiff's factual allegations "are 'merely consistent with' a defendant's liability," Iqbal, 556 U.S. at 678 (quotation omitted), or "do not permit the [C]ourt to infer more than the mere possibility of misconduct," id. at 679, the plaintiff "has not 'show[n]' . . . 'that . . . [he] is entitled to relief.'" Id. (quotation omitted).

On October 31, 2012, defendant Suzuki Motor incorporated under the laws of the State of California as a wholly-owned subsidiary of Suzuki Motor Corporation ("SMC") "for purposes of . . . transactions contemplated [between Suzuki Motor and American Suzuki Motor Corporation ("ASMC")] under . . . [an asset purchase agreement]." Doc. 21-3 at 16, ¶ 32. Shortly thereafter, on November 5, 2012, ASMC filed a voluntary petition seeking

relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California. In re American Suzuki Motor Corporation, Case 8:12-bk-22808-SC (Bankr. C.D. Cal.). On March 6, 2013, Suzuki Motor and ASMC entered into the Second Amended and Restated Asset Purchase Agreement ("APA"), see Doc. 21-1, which the Bankruptcy Court found was negotiated "without collusion, in good faith, and from arm's length bargaining positions." Doc. 21-3 at 19, ¶ 39.[3]

The APA recognized that ASMC had been "engaged in three distinct business lines . . . ," Doc. 21-1 at 7, ¶ B, only two of which are relevant to this action. The first was "the 'Auto Sales Business,'" id. at 7, ¶ B(i)(emphasis deleted), which was comprised of "the distribution and sale of Suzuki Automotive Products[.]" Id. The phrase "Suzuki Automotive Products" was defined in the APA as "Suzuki Automotives and automotive parts and other related products manufactured by or for SMC . . . ." Id. at 53, ¶ 16.

The second business line—"the 'Auto Servicing Business," id. at 7, ¶ B(ii)(emphasis deleted), concerned "the servicing of Suzuki Automotives, including any warranty work . . . ." Id. The APA described the Auto Sales Business and the Auto Servicing Business collectively "as the 'Auto Business," id. (emphasis deleted); only the latter—the Auto Servicing Business-however, was "referred [to] as 'Acquired Business,'" id., and the Bankruptcy Court specifically noted that Suzuki Motor was "not acquiring . . . [ASMC's] Auto Sales Business . . . ." Id. at 20, ¶ 43.

---

[3]The Bankruptcy Court specifically found that Suzuki Motor was neither "a successor or mere continuation of [ASMC] . . . ," Doc. 21-3 at 20, ¶ 43, nor "an alter ego of . . . [ASMC]." Id. ¶ 44.

Pursuant to the APA and the transactions contemplated therein, see id. at 7-8, ¶ E, ASMC agreed to sell, assign and transfer and Suzuki Motor agreed to purchase, acquire and accept, inter alia, all of ASMC's right, title and interest to and in "the Acquired Business, other than any Excluded Assets," id. at 8, ¶ 1.1.1, described as "the 'Purchased Assets.'" Id. Included in the Purchased Assets were "all Claims relating to any of the Purchased Assets, the Assumed Liabilities or the Acquired Business[.]" Id. at 9, ¶ 1.1.1(m). Included in the term "Excluded Assets" were those "assets . . . arising out of, relating to, or used in connection with the operation of the Auto Business, including Suzuki Automotives . . . ." Id. at 10, ¶ 1.2(a).

The liabilities that Suzuki Motor assumed through the APA were limited to those "[l]iabilities relating to the ownership of the Purchased Assets or the Acquired Business . . . ," id. at 15, ¶ 2.5(i), and "all Suzuki Product Liability." Id. ¶ 2.5(ii). The latter phrase was defined as "any [l]iability of . . . [ASMC], regardless of whether arising . . . (i) under [e]xpress [w]arranty [c]laims on any Suzuki Products[, including 'any Suzuki Automotive Products']; (ii) for recall and other obligations under the [National Traffic and Motor Vehicle Safety Act ("NTMVSA"), 49 U.S.C. § 301 et seq.,] . . . with respect to Suzuki Products; or (iii) under any Lemon Laws with respect to Suzuki Products." Doc. 21-1 at 53, ¶ 16. Accordingly, the APA obligated Suzuki Motor to notify consumers about recalls conducted pursuant to NTMVSA and under the supervision of the National Highway Traffic Safety Administration ("NHTSA"),[4] an agency of the Department of Transportation.

---

[4]No relief is sought under NTMVSA, and the parties have agreed that NTMVSA provides no private cause of action. See Doc. 17 at 25, ¶ 77 ("consumers do not have an express cause of action under . . . NTMVSA itself").

Dinwiddie had purchased a 2007 Suzuki Forenza that had been "manufactured, marketed, distributed, and/or sold," Doc. 17 at 6, ¶ 15, by ASMC, and he "received a copy of [a] . . . Recall Notice . . . in mid to late July 2014." Id. at 12, ¶ 31. It was during that time that Suzuki Motor had begun notifying consumers in accordance with NTMVSA that "'certain 2004-2008 Suzuki Forenza . . . vehicles,'" id. at 10, ¶ 25, were being recalled because "a defect which relate[d] to motor vehicle safety exist[ed] in . . . [those] vehicles." Id. The Recall Notice identified a list of "'symptoms' . . . including abnormal headlamp operation, abnormal daytime running lamp operation, unusual odors of heated plastic or wiring insulation, and intermittent vehicle battery discharge." Id.

The Recall Notice further advised:

> "Affected vehicles may generate heat in the Headlamp Switch or DRL Module, located on or near the left side of the steering column, which could melt the switch or module. If the heat generated within the Headlamp Switch or DRL Module melts the component, there is an increased risk of fire. You do not need to stop driving your vehicle, however if local driving rules or driving conditions require the use of your headlamps or DRL lighting, Suzuki [Motor] cannot recommend you operate the vehicle if the lighting is not operating as designed. If you smell unusual odors associated with possible overheated plastic or wire insulation while driving, please safely drive the vehicle off the roadway and exit the vehicle immediately. In addition, avoid parking the vehicle near permanent structures or in a garage until repairs can be performed."

Id. at 11, ¶ 26 (emphasis deleted).

The Recall Notice also advised "that [Suzuki Motor] . . . would repair the defect but added that 'Recall service parts are not yet available to correct this condition. Providing repair parts is a top priority, however, their availability is not known at this time. Vehicle owners will be notified by mail when repair parts are available and scheduling appointments can then begin.'" Id. ¶ 27 (emphasis deleted).

"[A]round the same time [that Dinwiddie received the Recall Notice], the headlamps in [his] . . . Forenza began not turning off intermittently when [he] . . . would attempt to switch them off[,]" id. at 12, ¶ 32, and that "[o]n these occasions, the lights would take approximately 20-40 minutes to turn off." Id.

On August 18, 2014, while driving the Forenza, Dinwiddie observed "gray smoke start[ing] to billow out from behind the dashboard and instrument panel and down by the pedals." Id. at 13, ¶ 34. He stopped the vehicle and exited it; the "Forenza began to fill with smoke and . . . flames [were seen] . . . ." Id. ¶ 35. The fire department was called, and it "confirmed that the fire was an electrical fire." Id. ¶ 36. Even though Suzuki Motor was advised in an e-mail dated October 7, 2014, that "the probable cause of the fire [was believed] to be in the area of the recalled item," id. ¶ 38, Suzuki Motor had not repaired the Forenza or offered to pay the costs of repairs at the time this action was commenced on October 15, 2014, or by December 29, 2014, the date the first amended complaint was filed.

In his amended pleading, Dinwiddie asserted multiple causes of action. His claims for relief are based on two theories of liability:[5]  (1) Suzuki Motor has assumed ASMC's liability by "adoption" through the APA, see id. at 17, ¶ 47; id. at 20, ¶ 57; id. at 22, ¶ 65; id. at 24-25, ¶ 75; id. at 27, ¶ 83; and (2) Suzuki Motor is liable because of its own conduct.

---

[5]In its Motion to Dismiss First Amended Class Action Complaint, Suzuki Motor, relying on certain allegations in the first amended complaint, has also argued that Dinwiddie is attempting to hold it liable as ASMC's "successor in interest." See, e.g., Doc. 17 at 8-9, ¶¶ 21-23; id. at 17, ¶ 49; id. at 30-31, ¶¶ 92, 94; id. at 32-33, ¶¶ 98-100. Dinwiddie has disclaimed any attempt to hold Suzuki Motor accountable under this theory. See Doc. 24 at 8 n.1.

See id. at 25, ¶ 75; id. at 27, ¶ 83; id. at 29, ¶ 87.  Suzuki Motor has challenged each claim for relief and each theory of liability.

In Count I, Dinwiddie has prayed for relief under the Oklahoma Uniform Commercial Code ("UCC"), 12A O.S. § 1-101 et seq., for breach of express warranty,[6] e.g., id. § 2-313, and for breach of the implied warranty of merchantability.[7]  E.g., id. § 2-314.  Dinwiddie has claimed that Suzuki Motor "breached its express warranty . . . by not furnishing (according to [Suzuki Motor's] . . . own admission in the Recall Notice) a vehicle with working parts and quality workmanship."  Doc. 17 at 18, ¶ 52.

Dinwiddie has further claimed that Suzuki Motor

breached the implied warranty of merchantability by furnishing vehicles that did not "pass without objection"(if the vehicles were unobjectionable, then a recall would be unnecessary); were not of "fair average quality;" were not "fit for the ordinary purpose" for which vehicles are used, namely, as a safe and reliable means of transportation; and generally are unsatisfactory, dangerous, and of questionable value . . . absent a remedy, repair, and/or reimbursement . . . .

Id. at 19, ¶ 53.

---

[6]In Paragraph 2.5(ii) of the APA, Suzuki Motor assumed "all Suzuki Product Liability," Doc. 21-1 at 15, ¶ 2.5(ii), which phrase is defined as "any [l]iability of . . . [ASMC], regardless of whether arising . . . (i) under [e]xpress [w]arranty [c]laims on any Suzuki Products[, including 'any Suzuki Automotive Products']."  Id. at 53, ¶ 16.  The phrase "Express Warranty Claim" is further defined as "a claim under a written warranty issued by [ASMC] . . .  but, for the avoidance of doubt, excluding claims for personal injury, third party property damage, or consequential damages of any kind."  Id. at 46, ¶ 16.  Accordingly, the Court finds that breach of express warranty claims fall within one category of claims assumed by Suzuki Motor.  See also Doc. 21 at 16.

[7]The Court likewise finds that implied warranty claims fall within the category of claims assumed by Suzuki Motor.  See also id. at 17.  In Paragraph 2.5(ii) of the APA, Suzuki Motor assumed in connection with "all Suzuki Product Liability," Doc. 21-1 at 15, ¶ 2.5(ii), ASMC's liability "under any Lemon Laws with respect to Suzuki Products."  Id. at 53, ¶ 16.  "Lemon Laws" are defined in the APA as meaning "the Magnuson-Moss Warranty Act, any similar state laws, as amended, and any rules or regulations promulgated pursuant thereto, as amended."  Id. at 48, ¶ 16.



The express written warranty that came with Dinwiddie's Forenza was limited in duration to three (3) years or 36,000 miles. See Doc. 17 at 6, ¶ 16. The pertinent section of the warranty booklet, which is entitled "NEW VEHICLE LIMITED WARRANTY   WHAT IS COVERED," Doc. 21-4 at 8, reads:

> [ASMC] . . . provides this warranty for new 2007 vehicles.  This warranty covers all parts of the vehicle as supplied by . . . [ASMC].  Needed repairs to correct defects in material or workmanship during the manufacture of the vehicle will be made at no charge for parts and labor. . . .
>
> WARRANTY PERIODS AND COVERAGES
>
> All warranty periods begin on the date the vehicle is first delivered at retail or first put into use, whichever comes first.
>
> Basic Components
>
> The warranty for all components, other than [for certain listed exceptions] . . ., are covered by this new vehicle limited warranty for 36 months or 36,000 miles, whichever comes first.

Id. (emphasis deleted).

The section of the warranty booklet entitled "NEW VEHICLE LIMITED," id. at 9, on which Dinwiddie's claim for breach of the implied warranty of merchantability is grounded, provides that that warranty "shall be limited to the duration of this written warranty." Id. (capitalization deleted).   The implied warranty was thereby limited to the same three (3)-year/36,000 mile duration as the express warranty.

Suzuki Motor has argued that it is entitled to dismissal of Dinwiddie's express and implied warranty claims for two reasons.  First, according to the first amended complaint the alleged defect did not manifest itself until after the expiration of both warranties, and second, in Oklahoma, express and implied warranty claims must be brought within five (5) years from the time of sale. E.g., 12A O.S. § 2-725(1).  Dinwiddie purchased his vehicle

in 2007, see Doc. 17 at 12, ¶ 30; the fire did not occur until August 2014, see id. at 30-31, and the lawsuit was not filed until October 2014. See Doc. 1. Because Dinwiddie has not cited any persuasive authority in support of the proposition that a latent defect discovered outside a warranty's limitations extends that warranty, see Cipollone v. Liggett Group, Inc., 505 U.S. 504, 525 (1992)(liability for breach of express warranty derived from, and measured by, terms of the warranty),[8] the Court has focused on Dinwiddie's arguments that the warranties' durational limits are unenforceable either because they are "unconscionable" or because they have been waived by fraudulent conduct.

In this connection, Dinwiddie has first argued that because the 2007 Forenza was defective at the time of sale and ASMC knew of such defect at the time the warranties were made, the three (3)-year/36,000 mile limits are "unconscionable."[9] See Doc. 24 at 22. Title 12A, section 2-302 of the Oklahoma Statutes permits this Court, if it

---

[8]See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008)(plaintiff failed to allege breach of warranty claim because head gasket functioned during the 36,000 miles/three years it was warranted); id. at 1023 (general rule is that express warranty does not cover repairs after applicable time or mileage period has elapsed); Canal Electric Co. v. Westinghouse Electric Co., 973 F.2d 988, 993 (1st Cir. 1992)("case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects--defects that may exist before, but typically are not discovered until after, the expiration of the warranty period"); Davisson v. Ford Motor Co., 2014 WL 4377792 (S.D. Ohio 2014); In re Ford Tailgate Litigation, 2014 WL 1007066 (N.D. Cal. 2014). See also McQueen v. BMW of North America, LLC, 2014 WL 656629 (D.N.J. 2014)(breach of warranty actions premised on defects that did not arise until after warranty expires are prohibited, regardless of plaintiff's assertion that defendant knew vehicle was defective before time limit took effect; rule focuses on when alleged defect manifests, not type of defect at issue, and no reason exists why design defect that manifests itself outside the time and mileage period should be treated differently than wear and tear defect that comes to light at similarly late date).

[9]To the extent, if any, Dinwiddie has argued that the duration of the implied warranty of merchantability is unconscionable for the mere fact it is limited to the duration of the express written warranty, such argument fails. See 12A O.S. § 2-308 (implied warranties may be limited to duration of written warranty of reasonable duration).

finds the contract or any clause of the contract to have been unconscionable at the time it was made[,] . . . [to] refuse to enforce the contract, or . . . [to] enforce the remainder of the contract without the unconscionable clause, or . . . so limit the application of any unconscionable clause as to avoid any unconscionable result.

12A O.S. § 2-302(A).

"The principle [behind this section] is . . . [to] prevent[ ] . . . oppression and unfair surprise and not [to] . . . disturb[ ] . . . [the] allocation of risks because of superior bargaining power." UCC Comment 1(citation omitted).  To give effect to that principle, the Court would ordinarily be tasked with deciding "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clause[ ] involved [is] . . . so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Id.

Dinwiddie's allegations of unconscionability, however, are found only in his response.  He has advanced no facts in the first amended complaint, which the Court could view in his favor, that the warranties' durational limitations are unfair or one-sided or that he lacked any meaningful choice at the time he purchased the 2007 Forenza regarding the time and mileage limitations.  In the absence of the same, the Court has not considered Dinwiddie's argument regarding the alleged unreasonableness of the warranties' limitations; the Court has instead considered Dinwiddie's argument that the warranties' durational limitations and/or the statutory limitations have been tolled or waived because Suzuki Motor together with ASMC "concealed and/or suppressed facts and information . . . concerning the [d]efect that is the subject of this lawsuit." Doc. 17 at 12, ¶ 32; e.g., id. at 19, ¶ 54.



In this connection, Dinwiddie has alleged that although ASMC "was already aware of a dangerous [d]efect existing in [the] . . . [2007] Forenza . . . ," Doc. 17 at 12, ¶ 30, it took no "steps to inform, warn, or notify [him] . . . of the existence of th[at] [d]efect or of any effect that the existence of the [d]efect would have on any warranty, express or implied." Id. He has further contended that ASMC instead "deliberately continued to advertise, distribute, market, and sell affected vehicles," id. at 9, ¶ 2, and that both ASMC and Suzuki Motor not only "actively concealed [the defect] from [him] . . . until the Recall Notice of July 22, 2014[,]" id., but also "deliberately delayed issuing a vehicle recall . . . until such time as all warranty terms had run out in an effort to shield themselves from liability." Id. at 10, ¶ 23.

> "Oklahoma law has long recognized[ that]
>
> [f]raudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts and thereby prevents a discovery of [its] . . . wrong, or the fact that a cause of action has accrued against [it] . . . , is not allowed to take advantage of [its] . . . own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud.

Masquat v. DaimlerChrysler Corp., 195 P.3d 48, 54-55 (Okla. 2008)(quoting Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, ___, 131 P. 174 (1913) (Syllabus by the court)). In Oklahoma, however, "'[t]he mere failure to disclose such material facts is not sufficient to prevent the running of the statute[.]'" Id. at 55 (quoting Loyal Protective Insurance Co. v. Shoemaker, 178 Okla. 612, ___, 63 P.2d 960 (1936) (Syllabus 1 by the court)). Rather, there must be "'something more than mere failure to disclose[.]'" Id. (quotation omitted). "'[S]ome actual artifice or some affirmative act of concealment, or some misrepresentation which induces the other party to inaction, or to

forgo inquiry[ is required].'" Id. (quotation omitted); e.g., Legacy Crossing, L.L.C. v. Travis Wolff & Co., L.L.P., 229 Fed. Appx. 672, 681 (10th Cir. 2007)(quoting Wills v. Black & West, Architects, 344 P.2d 581, 584 (Okla. 1959))(cited pursuant to Tenth Cir. R. 32.1) ("defendant must have 'commit[ted] some actual artifice to prevent knowledge or some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry'"). Some courts recognize that "[t]he party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity," King and King Enterprises v. Champlin Petroleum Co., 446 F. Supp. 906, 911 (E.D. Okla. 1978)(citations omitted), as required by Rule 9(b), F.R.Civ.P.[10] E.g., Dummar v. Lummis, 543 F.3d 614 (10th Cir. 2008) (allegations of fraudulent concealment, like other types of fraud, must be pleaded with particularity). Accordingly, the Court has examined Dinwiddie's allegations of fraudulent concealment under the standards that govern Rule 12(b)(6) as well as Rule 9(b).

Dinwiddie has alleged that ASMC and/or Suzuki Motor "possessed actual and exclusive knowledge of the defect," see Doc. 17 at 32, ¶ 98, in the 2007 models as a result of the "fifteen electrical fire and related complaints,"[11] id. at 6-7, ¶ 17,[12] filed with NHTSA

---

[10]Rule 9(b), F.R.Civ.P., requires that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." The challenged pleading must "'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" Koch v. Koch Industries, Inc., 203 F.3d 1202, 1236 (10th Cir. 2000)(quotation omitted).

[11]Dinwiddie has described these fifteen (15) electrical fire and related complaints as follows:

December 4, 2008 (electrical fire); January 5, 2009 (burning smell on driver's side-injury); May 25, 2011 (electrical fire-related to lights); February 1, 2012 (electrical fire-related to lights); August 8, 2012 (burning smell under instrument panel); September 10, 2012 (electrical fire-related to lights); July 24, 2013 (fire-cause uncertain); September 20, 2013 (electrical fire-related to lights); November 13, 2013 (electrical fire-related to lights); January 15, 2014 (interior fire-cause uncertain); March 12, 2014 (key hot in ignition); July 11, 2014 (electrical fire); July 15, 2014

and contended, without factual foundation, that both entities "were direct recipients of [these] . . . complaints." Id. at 8, ¶ 21.[13] Even assuming these complaints raise a plausible inference of knowledge about the 2007 Forenzas,[14] Dinwiddie has only averred that these two entities "took no steps of any sort to notify [him]," Doc. 17 at 33, ¶ 101, of the defect "prior to the summer of 2014." Id.

There are no factual allegations, well-pleaded or asserted with particularity, to support Dinwiddie's speculative and conclusory contentions that ASMC or, in particular, Suzuki Motor "deliberately delayed," Doc. 17 at 10, ¶ 23, notifying him or "actively disclaimed [their] . . . responsibility for the [d]efect[.]" Id. at 20, ¶ 54. That ASMC "deliberately continued to advertise, distribute, market, and sell affected vehicles," id. at

---

(electrical fire); August 22, 2014 (engine fire); and August 27, 2014 (electrical fire-related to lights).

Doc. 17 at 6-7, ¶ 17. No complaints about 2007 Forenzas were filed with NHTSA prior to Dinwiddie's purchase of his Forenza in 2007 and only two (2) were made prior to the expiration of the three-year express and implied warranties; no more than six (6) of the complaints were made prior to the expiration of the five -year statute of limitations. E.g., 12A O.S. § 2-725(1).

[12]The Recall Notice concerned a defect "'in certain 2004-2008 Suzuki Forenza and 2005-2008 Suzuki Reno vehicles,'" Doc. 17 at 10, ¶ 25–some 184,244 vehicles in all. See id. Dinwiddie has alleged that in addition to the foregoing fifteen (15) complaints about 2007 Forenzas, there were two (2) electrical fire complaints with respect to the 2004 models (both of which were not filed with NHTSA until 2008), four (4) electrical fire and related complaints with respect to the 2005 models (two (2) of which were filed in 2007, one (1) in 2012 and one (1) in 2013), at least six (6) electrical fire and related complaints with respect to the 2006 models (two (2) filed in 2009, one (1) filed in both 2010 and 2012 and two (2) filed in 2014), and there were at least three (3) electrical fire and related complaints with respect to 2008 models (all three (3) of which were not filed until 2014). See id. at 6-7, ¶ 17.
    In connection with the 2005-2008 Suzuki Renos, Dinwiddie has alleged that with respect to the 2005, 2006 and 2008 models, there was at least one (1) electrical fire complaint related to each (filed in 2009, 2012 and 2014). See id. at 7, ¶ 18

[13]There are no allegations in the first amended complaint regarding the investigation, if any, by NHTSA of these complaints.

[14]"[K]nowledge . . . may be alleged generally." Rule 9(b), supra.

14

9, ¶ 2, is not sufficient in the absence of any well-pleaded or particularized allegations that ASMC, with knowledge of the defect prior to the expiration of Dinwiddie's warranties, continued to represent, promote or market the safety of the 2007 Forenza. Dinwiddie has only theorized that ASMC and Suzuki Motor "actively concealed the facts of the [d]efect with the intent to induce [him] . . . to purchase[15] and retain [a] defective vehicle[ ] at a higher price than the vehicle['s] true value and to prevent warranty claims . . . ." Id. at 34, ¶ 103. Accordingly, regardless of whether Rule 12(b)(6) or Rule 9(g) governs, absent a factually supported allegation that Suzuki Motor, after its incorporation in 2012, either through its execution of the APA in 2013[16] or through its own conduct, engaged in a separate affirmative act that might constitute or even suggest active concealment and an intent to cover up the defect, the Court finds there can be no fraudulent concealment.[17]

In Count II, Dinwiddie has asserted a claim under the Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. § 2301 et seq., which provides a federal cause of action for "a consumer who is damaged by the failure of a . . . warrantor, or service contractor to

---

[15]Although there were twelve (12) NHTSA complaints about prior models, none of the NHTSA complaints about 2007 Forenzas were filed prior to Dinwiddie's purchase in 2007. See nn.12, 13 supra.

[16]Suzuki Motor did not execute the APA until March 2013; Dinwiddie has argued that Suzuki Motor nevertheless not only bears responsibility for its "fail[ure] to disclose the [d]efect . . . for over a year between the execution of the [APA] . . . and the Recall Notice," Doc. 17 at 34, ¶ 103, but also "bear[s] full responsibility for [ASMC's] . . . conduct and concealment . . . ." Id.

[17]Under Oklahoma law, "fraudulent concealment" operates to toll the limitations period for commencing actions seeking relief based on fraud. Under certain circumstances it can also be asserted as a separate claim. To the extent Dinwiddie has asserted fraudulent concealment as an independent claim for relief, see Doc. 17 at 31 ("Count VII - Fraudulent Concealment")), but see Doc. 24 at 19-20 ("Count VII for fraudulent concealment is not a formal 'claim' asserting liability but is rather a necessary corollary to [d]efendant's expected statute of limitations theory of defense and as part of [p]laintiff's claims under Oklahoma's Consumer Protection Act"), the Court finds such claim fails for the same reasons the doctrine fails in this case to toll the warranty periods.

comply with any obligation . . . under a written warranty . . . [or] implied warranty[.]"  Id. §

2310(d)(1).  As case law teaches, "claims under . . . Magnuson-Moss . . . stand or fall with

. . . express and implied warranty claims under state law.  Therefore, th[e] [C]ourt's

disposition of [Dinwiddie's] . . . state law warranty claims determines the disposition of [his]

Magnuson-Moss . . . claims." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th

Cir. 2008)(footnote omitted); e.g., Deburro v. Apple, Inc., 2013 WL 5917665 *8 (W.D. Tex.

2013)(Magnuson–Moss claims are contingent upon state law warranty claims; failure of

state law claims requires dismissal of federal claims).   Having dismissed Dinwiddie's

warranty claims in Count I, the Court finds Suzuki Motor is likewise entitled to dismissal of

Count II.

Suzuki Motor has also challenged Counts III, IV, V and VI.   The first two

counts–Counts III and IV–seek relief under state common law for manufacturers' products

liability and negligence, respectively;[18] Count V seeks relief for alleged violations of the

Oklahoma Consumer Protection Act, 15 O.S. § 751 et seq.; and in Count VI, Dinwiddie has

claimed that Suzuki Motor has been unjustly enriched.

To determine whether Dinwiddie has met his "obligation to provide the 'grounds' of

. . . [his] 'entitle[ment] to relief,'" Twombly, 550 U.S. at 555 (citation omitted),[19] the Court

_____

[18]The Court's findings with regard to damages are dispositive as to these two counts; accordingly, the Court has not considered in detail whether the APA shields Suzuki Motor from liability.

[19]While Dinwiddie has cited Twombly and Iqbal, he has argued that "'[d]ismissal is proper only if it appears beyond reasonable doubt that [he] . . . can prove . . . no set of facts in support of [his] . . . claim[s] which would entitle him to relief.'"  Doc. 24 at 9 (quotation omitted)(emphasis deleted).  As the United States Court of Appeals for the Tenth Circuit stated in Smith v. United States, 561 F.3d 1090 (10th Cir. 2009), the "no set of facts" standard found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), was replaced by the "plausibility" standard announced in Twombly. E.g., Smith, 561 F.3d at 1098.

has applied <u>Twombly/Iqbal</u> to the first amended complaint and accepted as true any well-pleaded factual allegations asserted therein.  In doing so, the Court is mindful that while Rule 12(b)(6) "does not require . . . [Dinwiddie to] establish a prima facie case in [his] . . . [first amended] complaint," <u>Khalik</u>, 671 F.3d at 1192, an examination of the essential "elements of each alleged cause of action [is] help[ful] to determine whether [he] . . . has set forth a plausible claim." <u>Id.</u> (citations omitted).  Accordingly, the Court has first considered what elements Dinwiddie must ultimately establish to prevail on a manufacturers' products liability claim, <u>e.g.</u>, <u>Burnett v. Mortgage Electronic Registration Systems, Inc.</u>, 706 F.3d 1231, 1236 (10th Cir. 2013) (<u>Iqbal's</u> contextual approach means comparing pleading with elements of cause of action), and then "draw[ing] on its judicial experience and common sense,'" <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679), "compar[ed] . . . [Dinwiddie's allegations] . . . with the elements of th[at] cause[ ] of action." <u>Id.</u>; <u>e.g.</u>, <u>id.</u> (pleadings that do not allow for at least "reasonable inference" of legally relevant facts are insufficient).

Oklahoma adopted the theory of manufacturers' products liability in <u>Kirkland v. General Motors Corp.</u>, 521 P.2d 1353 (Okla. 1974), which "teaches that one who sells a product in a defective condition, which is unreasonably dangerous to the user or consumer, is strictly liable for the physical harm to the person or property caused by the defect." <u>Bishop v. Takata Corp.</u>, 12 P.3d 459, 462 (Okla. 2000).  To maintain a successful cause of action under this theory, Dinwiddie must prove inter alia that the 2007 Forenza was the cause of "the physical harm to [his] . . person or property," <u>id.</u>; <u>e.g.</u>, <u>Johnson v. Ford Motor Co.</u>, 45 P.3d 85, 91 n.12 (Okla. 2002)(citations omitted), because in Oklahoma, a plaintiff may not pursue a manufacturers' products liability claim where the only damages are

"injury to the allegedly defective product itself and [the] consequential economic harm flowing from that injury[.]" Oklahoma Gas & Electric Co. v. McGraw-Edison Co., 834 P.2d 980, 981 (Okla. 1992). "[D]isappointment associated with [a] . . . manufacturer's unsuccessful attempts to remedy the defect," id. at 982, losses and costs associated with product value and repair, and damages resulting from loss of use are not sufficient.

The "economic loss rule," which was adopted by the Oklahoma Supreme Court in Waggoner v. Town & Country Mobile Homes, Inc., 808 P.2d 649 (Okla.1990), was first recognized by the United States Supreme Court in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). The latter court, sitting in admiralty, determined that a products liability claim was not actionable absent personal injury or damage to other property. E.g., id. at 870.[20]

The state court in Waggoner wrote:

> The facts of this case involve only economic loss and disappointment associated with [the] manufacturer's unsuccessful attempts to remedy condensation within [the] consumers' mobile home. No personal injury or damage to other property occurred. Damage was limited to the product itself. Therefore, any recovery must be based upon the contractual relationship, specifically the warranty provisions, express or implied.

808 P.2d at 653.

> In support of his claim for relief, Dinwiddie has alleged that he has

> incurred damages that go beyond mere damage to the vehicles themselves. Rather, [he has] . . . been exposed to an unreasonable risk of harm; ha[s] been forced to forego driving [his] . . . vehicle[ ] for safety reasons; ha[s] suffered a diminution in the value of the vehicle[ ]; property damage to [his]

---

[20]The Supreme Court reasoned that warranty law sufficiently protected the purchaser of a defective product for damages sustained to the product itself. E.g., East River, 476 U.S. at 870. The Court is mindful that Dinwiddie's warranty claims have been dismissed; however, application of the economic loss rule is not dependent upon actionable warranty claims.

... vehicle[ ]; and ha[s] been placed in an untenable situation in which [he is] . . . unable to obtain a prompt repair, leading to the stress and mental/emotional distress of being stuck with [an] unsafe vehicle[ ].

Doc. 17 at 24, ¶ 72. As case law teaches these allegations are not sufficient, and in the absence of well-pleaded allegations of physical damage either to the plaintiff himself or to other property,[21] the Court finds that Suzuki Motor is entitled to dismissal of Count III, whether that count is based on Suzuki Motor's own conduct or its adoption of liability under the APA.

Suzuki Motor has also challenged Count IV, wherein Dinwiddie has alleged that Suzuki Motor had a duty "to conduct vehicle recalls in a manner that is safe for consumers . . . ," Doc. 17 at 25, ¶ 77,[22] and that it breached this duty by "its negligent handling of the recall," id. at 26, ¶ 81, and by its "fail[ure] to disclose the facts pertaining to the [d]efect . . . ." Id. at 26-27, ¶ 81. Suzuki Motor has argued that this claim for relief fails for the same reason Dinwiddie's manufacturers' products liability claim fails. Dinwiddie has not challenged Suzuki Motor's argument as to this specific claim, and for that reason and because extant case law warrants the relief Suzuki Motor has requested, the Court agrees that Suzuki Motor is entitled to dismissal of Count IV.

---

[21]See Doc. 17 at 12, ¶ 29 (plaintiff has suffered "ascertainable loss of money, property and/or value of [his] . . . vehicle[ ] . . . , including diminution of value to such vehicle[ ] and damage to property stemming from overheating and fire").

[22]Dinwiddie has alleged in particular that Suzuki Motor "negligent[ly] handl[ed] . . . [the] vehicle recall," id. at 25, ¶ 77, "by[ ] (1) failing to issue a vehicle recall notice regarding the risk of electrical fire due to vehicle lights until July 22, 2014 in spite of knowledge of such [d]efect as early as April 5, 2007[, the date of an electrical fire in a 2005 Forenza, see id. at 6, ¶ 17]; (2) failing to issue a vehicle recall notice that warned consumers not to drive the vehicles (. . . the Recall Notice specifically stated[:] 'You do not need to stop driving your vehicle' except in certain circumstances); (3) failing to offer immediate repair given the risk of danger to consumers; and (4) failing to perform repairs of such vehicles to achieve safe driving status." Id. at 25-26, ¶ 77.

As stated, Dinwiddie has sought only economic damage.[23] There is no prayer in the first amended complaint for damages arising from personal injury[24] or for harm to other property. Case law teaches that "[t]he reasoning of Waggoner applies to the full range of unintentional torts," United Golf, LLC v. Westlake Chemical Corp., 2006 WL 2807342 *3 (N.D. Okla. 2006)(citing Waggoner, 808 P.2d at 652-53); accordingly, negligence claims like manufacturers' products liability claims are precluded "when [warranty claims] . . . provide[ ] a comprehensive remedy for [the] plaintiff's economic injury." Id. (citation omitted). See Fintube Technologies, Inc. v. Tubetech North America, Inc., 2006 WL 1266487 (N.D. Okla. 2006).

In Count V, Dinwiddie has sought to hold Suzuki Motor liable for violations of the Oklahoma Consumer Protection Act ("OCPA" or "Act"), 15 O.S. 751 et seq. To establish an OCPA claim, a plaintiff must show (1) that the defendant engaged in an "unlawful practice" as that term is defined in section 753 of the Act, "(2) that the challenged practice occurred in the course of [the] defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." Patterson v. Beall, 19 P.3d 839, 846 (Okla. 2000). OCPA, however, exempts from its

---

[23]See Doc. 17 at 26, ¶ 79 ("Plaintiff's Forenza . . . did catch on fire, at great personal risk to [p]laintiff, damaging [p]laintiff's Forenza and resulting in a costly repair")

[24]To the extent, if any, Dinwiddie has alleged that he has suffered "stress and mental/emotional distress," id. at 24, ¶ 72, as a result of his purchase of and "being stuck with [an] unsafe vehicle[ ]," id., such allegation alone is not sufficient. In Oklahoma, recovery for mental and/or emotional distress is permitted only if the negligent act also resulted in physical injury; that is to say, mental or emotional distress must be accompanied by physical injury. See, e.g., Kraszewski v. Baptist Medical Center of Oklahoma, Inc., 916 P.2d 241 (Okla. 1996); Ellington v. Coca Cola Bottling Co. of Tulsa, 717 P.2d 109 (Okla.1986); Thompson v. Minnis, 201 Okla. 154, 202 P.2d 981, 985 (1949).

purview any "actions or transactions regulated under laws administered by . . . any . . . regulatory body . . . of . . . the United States . . . ." 15 O.S. § 754(2).

Those courts that have addressed this issue have found the statutory exemption to be applicable when the alleged conduct about which the plaintiff has complained is regulated by a government agency. E.g., Thomas v. Metropolitan Life Insurance Co., 540 F. Supp.2d 1212, 1228 (W.D. Okla. 2008). It is undisputed in this case that Suzuki Motor was acting under NHTSA's supervision and regulatory authority during the recall process;[25] thus, to the extent Dinwiddie has sought to hold Suzuki Motor "liable for its own failure to comply with [OCPA] . . . in its mishandling of the recall," Doc. 17 at 27, ¶ 83, the statutory exemption applies and Suzuki Motor may not be held liable.

In his response, Dinwiddie has argued that he "has alleged a broader OCPA violation that simply mishandling the recall: the mishandled recall is merely the final symptom of an ongoing fraudulent course of conduct by [Suzuki Motor] . . . and ASMC to conceal the defect from consumers." Doc. 24 at 28-29. He has contended that the first amended complaint "detail[s] a multi-year course of conduct 'to conceal a dangerous [d]efect from consumers and fail to offer a repair, honor . . . warranties, or otherwise make affected consumers whole.'" Id. at 29 (quoting Doc. 17 at 29, ¶ 88). This argument is grounded on Dinwiddie's belief that Suzuki Motor "expressly adopted claims arising under consumer protection statutes in the [APA] . . . ," Doc. 17 at 27, ¶ 83, and that it is therefore "futile for [Suzuki Motor] . . . , who actively participated in the drafting and execution of the [APA] . . . to now attempt to use [that document] . . . as a shield from liability . . . ." Id.

---

[25]See Doc. 17 at 29, ¶ 88 ("vehicle recalls themselves are governed by [NHTSA]").

Although Suzuki Motor assumed "all Suzuki Product Liability," Doc. 21-2 at 15, ¶ 2.5(ii), which includes "any [l]iability of . . . [ASMC], . . . arising . . . under any Lemon Laws with respect to Suzuki Products," id. at 53, ¶ 16, the term "Lemon Laws" is expressly limited in the APA to "the Magnuson-Moss Warranty Act, any similar state laws, as amended,[26] and any rules or regulations promulgated pursuant thereto, as amended." Id. at 42, ¶ 16.  See, e.g., Cline v. DaimlerChrysler Co., 114 P.3d 468 (Okla. App. 2005) (violation of Magnuson-Moss Act does not constitute per se violation of OCPA).  That lemon laws in general may be geared toward consumer protection does not alter the express definition of that term in the APA.  Accordingly, Suzuki Motor did not assume liability for any OCPA violation and is entitled to dismissal of this claim.

In Count VI, Dinwiddie has alleged that "[i]t is not necessary that . . . [Suzuki Motor] have expressly assumed liability for unjust enrichment in the purchase agreement, because to the extent to which . . . [ASMC] was unjustly enriched . . . , [Suzuki Motor] . . . was similarly enriched via its acquisition of [ASMC] . . . ." Doc. 17 at 30, ¶ 92. Dinwiddie has further alleged in support of this count that Suzuki Motor "itself was unjustly enriched by accepting the benefits of its purchase of . . . [ASMC] while simultaneously refusing to undertake liabilities which it had expressly agreed to assume, thereby harming [him] . . . [by] prevent[ing him] from obtaining the benefit of [his] . . . bargain with [ASMC] . . . and/or with . . . [Suzuki Motor]." Id.

Dinwiddie has contended that

[t]his case presents a classic instance of unjust enrichment whereby [Suzuki Motor] . . . and [its] . . . predecessor in interest accepted payment in full for

---

[26]See 15 O.S. § 901 (Oklahoma's "lemon law").

> vehicles which were warranted to be safe, without defect to any components, and merchantable. Yet the vehicles measured up to none of these promises . . . . Further, [Suzuki Motor] . . . concealed a dangerous defect for seven years and still has not provided a solution to its consumers nor compensation to account for the loss in value and/or damage to the vehicles. In short, [Suzuki Motor] . . . obtained the benefit of the bargain, but [the] [p]laintiff . . . did not. Therefore, [Suzuki Motor] . . . has been unjustly enriched at the [the plaintiff's] expense . . . .

Id. at 31, ¶ 94. As relief, Dinwiddie has prayed for "a constructive trust [to be imposed] on the monetary benefits unjustly received and retained by [Suzuki Motor] . . . , both in the past and to the present day." Id. ¶ 95.

To the extent unjust enrichment is an equitable, quasi-contractual claim (and not merely an equitable remedy), "a party . . . [must plead and prove] . . . 'enrichment to another, coupled with a resulting injustice.'" City of Tulsa v. Bank of Oklahoma, 280 P.3d 314, 319 (Okla. 2011)(quoting Teel v. Public Service Co. of Oklahoma, 767 P.2d 391, 398 (Okla. 1985)(superceded by statute on other grounds)).

As the Bankruptcy Court observed, Suzuki Motor did not acquire ASMC's Auto Sales Business; thus, even if ASMC profited from selling allegedly defective automobiles, or as Dinwiddie has alleged, "obtained the benefit of [its] . . . bargain," Doc. 17 at 31, ¶ 94, with Dinwiddie because it received "payment in full for [a] vehicle[ ] which w[as] warranted to be safe," id., any profit, benefit or payment that resulted from that sale[27] was not acquired by Suzuki Motor.

---

[27]In Oklahoma, "'when a constructive trust is sought to remedy unjust enrichment, [as requested in this case,] there must be some active wrongdoing on the part of the person against whom recovery is sought[.]'" Oklahoma Dept. of Securities ex rel. Faught v. Blair, 231 P.3d 645, 659 (Okla. 2010)(quotation omitted). That Dinwiddie paid ASMC for his vehicle is not, in the Court's opinion, sufficient to show that the initial sales transaction conferred an unjust benefit on ASMC. Moreover, to the extent that Dinwiddie's unjust enrichment claim is grounded on the same allegations of fraudulent conduct that support his theory of fraudulent concealment, the Court's findings as that theory are dispositive of this equitable claim.

In response, Dinwiddie has contended that while Suzuki Motor may not have acquired the Auto Sales Business, it purchased ASMC's second business line—"the 'Auto Servicing Business," Doc. 21-1 at 7, ¶ B(ii)(emphasis deleted), which included "the servicing of Suzuki Automotives, including any warranty work . . . ," id., and that by "servicing and repairing defects . . . in Suzuki vehicles," Doc. 24 at 30, Suzuki Motor has been enriched.  Dinwiddie, however, has expressly alleged in the first amended complaint that despite a request to do so, Suzuki Motor has not "repair[ed] . . . [his] Forenza or offer[ed] to pay the costs of the repair." Doc. 17 at 13, ¶ 37.  Thus, no "monetary benefits [have been] unjustly received and retained by [Suzuki Motor] . . . ." Id. at 31, ¶ 95.  Suzuki Motor is therefore entitled to dismissal of this claim for relief.

Based on the foregoing, the Court

(1) GRANTS Suzuki Motor's Motion to Dismiss First Amended Complaint [Doc. 21] filed on February 2, 2015;

(2) DISMISSES Dinwiddie's first amended complaint [Doc. 17] filed on December 29, 2014; and

(3) having addressed the issues presented in the instant motion, DECLINES Suzuki Motor's alternate request that the Court stay this matter so that the Bankruptcy Court may resolve any disputes between the parties that are governed by the APA.

ENTERED this 27th day of May, 2015.

LEE R. WEST
UNITED STATES DISTRICT JUDGE